TROMBLEY & CARRIER CO. v. SELIGMAN.

(Supreme Court, Appellate Division, Third Department.   June 24, 1909.)

1. APPEAL AND ERROR (§ 1097*)—SUBSEQUENT APPEALS—LAW OF THE CASE.

While it is the duty of an appellate court to follow its former decision in the same case on a subsequent appeal, the court is not precluded from correcting a manifest error in its former judgment, and it may, for cogent reasons, reverse or qualify a prior decision.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4360; Dec. Dig. § 1097.*]

2. FRAUDS, STATUTE OF (§ 159*)—QUESTIONS FOR JURY.

Evidence in an action by a lumber dealer to recover the price of lumber used in the erection of a house on defendant's land *held* not sufficient to show as a matter of law that defendant's contract with plaintiff was to answer for the default of another, and therefore void within the statute of frauds, but sufficient to carry the case to the jury.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 378; Dec. Dig. § 159.*]

Appeal from Trial Term, Franklin County.

Action by the Trombley & Carrier Company against Edwin R. A. Seligman. Judgment for defendant, and plaintiff appeals. Reversed.

The complaint alleged a sale to the defendant of lumber and material, that was used in the erection of a cottage upon the lands of the defendant at Lake Placid, and that the defendant agreed to pay for the same. The answer denied these allegations, and alleged that, at the times mentioned in the complaint, one Joseph B. Williams was engaged in the construction of a cottage for the defendant under a contract with him, that by the terms of the contract Williams was to furnish all of the necessary material, and that the material in question was furnished by the plaintiff upon the order and credit of Williams. The defendant further alleged that the contract was to answer for the default or miscarriage of Williams, and was, therefore, void under the statute of frauds. The court held, as a legal conclusion from the evidence in the case, that the defendant was not a purchaser of the property, that his promise was within the statute of frauds, and dismissed the complaint.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

H. P. Coats, for appellant.
Francis A. Smith, for respondent.

SEWELL, J. This action has been twice tried. On the first trial the plaintiff recovered. The judgment on appeal to this court was affirmed, but was reversed by the Court of Appeals for an error in the admission of evidence. I have not been able to find, nor have counsel pointed out, any substantial variance in the evidence from that given upon the first trial, and I think that it is fair to assume that all the material facts bearing upon the liability of the defendant, in the present record, were in the record on the former appeal.

It is urged by the appellant that the judgment should be reversed simply on the strength of our decision upon the former appeal—that it is the law of the case. There is no iron rule which precludes a court from correcting a manifest error in its former judgment, or which requires it to adhere to an erroneous view of the facts or the law.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It may, for cogent reasons, reverse or qualify a prior decision, even in the same case; but the cases in which this will be done are exceptional, and the power should be sparingly exercised. Oakley v. Aspinwall, 13 N. Y. 500; Cluff v. Day, 141 N. Y. 580, 36 N. E. 182. When a question has been once decided, the same parties cannot be permitted to reopen the discussion without great detriment to the public interest and destroying that respect for the decisions of courts which it is important should be maintained. Mygatt v. Coe, 142 N. Y. 78, 36 N. E. 870, 24 L. R. A. 850; Roberts & Co. v. Buckley, 145 N. Y. 215, 39 N. E. 966. While it is our duty to follow and abide by our former decision, it may be more satisfactory, if not useful, to consider whether the learned trial court was authorized to take from the jury the question whether the plaintiff furnished the lumber and material to Williams, the contractor, or to defendant, the owner.

It cannot be denied that there was affirmative evidence tending to prove that there was an original undertaking on the part of the defendant to pay for the material furnished by the plaintiff. John Carrier, the plaintiff's treasurer, testified that he had a conversation with the defendant, before the lumber or material in question was ordered, in which the defendant asked him for the price of the doors and windows, and he replied, "$651"; that the defendant said "he would let me know that night whether he would accept it or not." He also testified that he saw him in the dining room of the Berkeley House about 8 o'clock in the evening of that day, and that:

"While we were talking Mr. Williams came in, and Mr. Seligman spoke to him about the price of the doors and windows, and asked him if he thought that was all right, and Williams said he did, and that the price was satisfactory. Then Mr. Seligman told me to go ahead and get the stuff out. We then had some further talk about what other material was needed to complete the camp, * * * and it was agreed that we were to ship it by team as fast as we could get it out, at an extra charge for the team haul, which I believe was $1.25 per thousand. The price for ceiling was $30 a thousand delivered. Mr. Seligman said that he wanted the stuff in a hurry, even at the added expense of getting it there. He was anxious to get the camp finished. He then said he would like to speak to Mr. Williams a moment, and he would see me later outside. I went out into the office and waited for him there. In a few minutes he came out with Williams and said to me, 'When this stuff is delivered, Mr. Williams will give you orders on me for it, and I will pay then.' I told him that I did not think the orders were necessary; that we would not know until the work was completed how much it would be, and when it was done I would render him the bill."

The witness also testified that during the conversation in the hotel Seligman said, "I will be responsible for this"; that the material was charged to the defendant upon the plaintiff's books; that there was "never any talk between Williams and myself about furnishing these goods, except as to prices which we would furnish such goods for"; and that he did not know that Williams was a contractor until some time after the material had been delivered. The evidence of Carrier as to the conversation and agreement in the hotel was corroborated by Williams. He testified that the defendant said, among other things:

"Carrier, I want to get this stuff there. I don't want any expense spared in getting it there. It has got to be hurried through, and you see that I get the lumber, and I will be responsible for all material and lumber that goes over there."

It was not made to appear that Williams made a contract with the plaintiff for the material, or that there was an existing indebtedness or obligation on his part at the time the defendant's promise was made, to which it could be collateral. I think the evidence was, at least, as consistent with the theory of a sale to the defendant as to the contractor, and the jury might have properly found that the defendant was the principal debtor, and his agreement was to discharge his own obligation.

It follows that the complaint should not have been dismissed, and that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.