THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN JOHNSON, Appellant.—Judgment, Supreme Court, Bronx County, rendered March 12, 1976, convicting defendant, after a jury trial, of murder in the second degree (felony murder) and sentencing him to a term of 25 years to life, is reversed, on the law and as a matter of discretion in the interest of justice, and the case is remanded to the trial court for a new trial. The evidence introduced by the District Attorney was in substance that the defendant was one of three men walking behind the deceased, that as a preliminary to a robbery the defendant struck the deceased over the head with a blunt instrument inflicting injuries that resulted in his death some days later, and that the defendant, the two men walking with him, and another who was walking beside the deceased, swarmed over him, some or all of them (varying with the testimony) placing their hands in the pockets of the fallen man. On the approach of bystanders, neighbors of the deceased, the four men moved rapidly from the scene. The defendant and another were followed by a witness and pointed out to a police officer, who arrested them. A metal pipe was removed from the defendant, which investigation established was not in fact the blunt instrument that had been used. The evidence was sufficient to sustain the jury's verdict if the case had been tried appropriately. Unfortunately, the District Attorney saw fit in his opening statement to refer to the removal of the pipe from the defendant, although as he acknowledged at that time, the pipe in fact had nothing to do with the death of the deceased. Inevitably, this allusion led defense

counsel to question a witness in an effort to confirm that the pipe was not, and could not be, the murder weapon. This was followed by the District Attorney exhibiting. the pipe to a later witness (and the jury), and to arguments during summation concerning it by both counsel, featured by the District Attorney's statement (claimed here to have been an inadvertent slip) that the defendant had struck the deceased with the pipe. The District Attorney has sought to justify the reference to the pipe in the opening, and the focusing on it that followed, on the theory that the defendant's possession of the pipe in some way showed "consciousness of guilt." This argument is wholly unpersuasive. The inescapable effect of injecting the pipe into the case was to invite the jury to infer that someone carrying it would be disposed to strike another over the head with a blunt instrument—and that appears to have been the basic intent. Its unwarranted introduction into this case was gravely prejudicial and seriously impaired the fundamental fairness of the trial. (See *People v Zackowitz,* 254 NY 192; *People v Kitchen,* 55 AD2d 575, 576.) Accordingly, the conviction must be reversed and the case remanded to the trial court for a new trial. (See *People v Crimmins,* 36 NY2d 230, 238.) Concur—Lane, Markewich and Sandler, JJ.; Lupiano, J. P., dissents in a memorandum as follows: After a jury trial, defendant was convicted of felony murder. The majority while recognizing that the evidence was patently sufficient to sustain the jury's verdict, conclude that the verdict must be overturned and defendant granted a new trial because prosecutorial error deprived defendant of a fair trial. Scrutiny of this record discloses that defendant was not deprived of a fair trial. An eyewitness to the crime, Willie Mae Walker, testified that she saw the defendant in the company of others, walk up behind the victim, one Mitchell, strike Mitchell across the head and proceed to rifle the victim's pockets with his confederates. In returning a guilty verdict, the jury as finders of fact, found the testimony of this eyewitness credible. The eyewitness could not identify the nature of the instrument used by defendant when he struck the victim. The police, when they apprehended the defendant in flight from the crime scene, found a pipe in his possession. This pipe was never introduced into evidence and was never referred to as the murder weapon during trial or in summation by the People. Defendant contends that the exhibition and attempted introduction into evidence of the pipe found in his possession at the time of his arrest, which was explicitly referred to before the. jury as *not* the murder weapon and *one isolated reference* in a lengthy summation by the prosecutor to the victim being struck on the head with *a pipe,* deprived defendant of a fair trial. On this flimsy basis, defendant argues that the jury was misled into concluding that the defendant killed the victim with the pipe found in defendant's possession at the time of his apprehension by the police. To give credence to the defendant's argument on this record is to deny even a modicum of basic intelligence to the jurors.* The indictment

---

* Even assuming "there is a fair conflict in the evidence or it is such that different inferences can be properly drawn from it, the determination of the jury will not be interfered with, unless it is clearly against the weight of evidence, or appears to have been influenced by passion, prejudice, mistake or corruption. [citation] If, in the judgment of this court, there was a rational doubt of the guilt of the defendant, it would not be a sufficient ground for reversal. Under our system of criminal jurisprudence, it becomes the exclusive province of the jury to determine whether the evidence pointing to the guilt of the accused is so lacking in convincing force as to leave an intelligent and discriminating mind in doubt as to the truth of the charge contained in the indictment. When the jury, by their verdict, have declared that no

charged this defendant with others of, *inter alia,* the following: "on or about July 16, 1974 while engaged in the commission of the crime of Robbery, and in the course of such crime, and in furtherance thereof [defendant] caused the death of one Frederick David Mitchell not a participant in the crime, by striking him *with a blunt instrument"* (emphasis supplied). Perusal of the lengthy trial record discloses the following references to a pipe, all of which are isolated references in a context which clearly demonstrates that defendant was not deprived of a fair trial. At the trial's commencement, in his opening statement to the jury, the prosecutor insofar as pertinent to the issues raised on this appeal, stated: "David Mitchell walks down [the] street * * * Three men approach from behind * * * One of those men, John Johnson [defendant herein], hits David Mitchell in the head with some blunt object. Mitchell goes to the ground, falls to the ground. [Defendant] aids and assists in this further, after striking David Mitchell to the ground, the blow that eventually kills David Mitchell, in that he also apparently goes through the pockets of David Mitchell. That is robbery in the first degree. That is felony murder. * * * Oh, there is one last thing. At the time that [defendant] was apprehended, a pipe is removed from his hands. Now, the People do not allege that this is the pipe used to commit this murder. But rather." Defense counsel's objection at this point was sustained, the jury was directed to disregard the prosecutor's statement and the People called their first witness, Willie Mae Walker, an *eyewitness* to the crime. She testified that one of the three men following Mitchell "hit [him] across the head, and he went down to the ground" and identified defendant Johnson as the one who struck the victim. She admitted that defendant had something in his hand when he struck, but did not know what the object was other than "It wasn't too large." Defense counsel (for defendant Johnson) in cross-examination inquired if Ms. Walker was able to see what Mitchell was struck with. Again, the witness responded that she could not identify the object other than "It wasn't too long." Not satisified, defense counsel persisted in questioning the witness as to the nature of the object, but received the same responses. Subsequently counsel for codefendant Wooden, in cross-examining this witness, put the following question: "Now, Mrs. Walker, if you will, let us go back to the time when you saw Mr. Mitchell struck with that pipe, fall to the ground and these four men go through his pockets. You said that took about four to five minutes; correct?" The witness responded: "From the time I seen him." Counsel for Wooden in his inquiry subsequently referred to the instrument used in striking the victim as "an object." The autopsy performed on the victim disclosed that death was due to the blow received on the head, indicative that the victim was struck by a blunt object with great force. In cross-examining the doctor employed by the coroner's office, counsel for defendant Johnson at all times referred to the object which struck Mitchell as "a blunt instrument." Officer Harrigan, who arrested defendant, stated that he removed from defendant an iron bar which was marked for identification. Its offer in evidence was objected to by defense counsel. Outside of the jury's hearing, in response to the trial court's inquiry as to whether the prosecutor was asking the jury to speculate that this iron pipe

such condition of mental uncertainty has arisen from a contemplation of the evidence, the prisoner has had the full benefit of the rule of law which protects him from punishment, unless his crime is established beyond a reasonable doubt, and the question is not open for review in this court, unless the case is so weak that the verdict should be set aside because against the weight of the evidence, or for other sufficient cause" *(People v Taylor,* 138 NY 398, 405-406).

was in fact the blunt instrument used in striking the victim, the People declared: "No * * * In fact, what I am going to say in my summation, as I said in my opening, is that it is not the weapon that was used * * * I intend to establish through the witness Harry Jones this was not the weapon that was used. The only reason I am introducing it into evidence is because it was removed from the defendant Johnson, and I think it does go to show a consciousness of guilt in that he armed himself to defend himself * * * from the men [who] were chasing him. Because during the preliminary hearing, there were numerous questions directed to the witnesses about the finding of the pipe, and I was concerned that at the trial the police officers would be questioned as to the finding of a pipe, and when they said they did find a pipe and I didn't introduce it in evidence, then the issue would be raised, 'Why didn't the People introduce the pipe recovered from the defendant in evidence when they had it?' So I was in no position to do otherwise."* The trial court sustained the objection and this pipe was not admitted into evidence. Harry Jones, another witness to this occurrence, testified on direct that one of the men following Mitchell "raised up something and hit Mr. Mitchell from the back across the head," but he could not see if the perpetrator had anything in his hand. Defendant's counsel inquired if this witness saw the weapon—whether he saw a pipe or a stick or a brick or anything similar. To all these questions, Mr. Jones responded negatively, reiterating that he did not see the weapon used. Redirect and re-cross-examination elicited that Jones observed something in the hand of the man which was used to strike Mitchell, but could not identify the object. Counsel for codefendant Wooden in his lengthy summation made no reference to a pipe as the instrument used to strike Mitchell. Defendant Johnson's counsel in summation, despite the trial court's rulings sustaining his objections to the pipe recovered from defendant at the time of his apprehension and despite the representation by the People made in front of the jury in opening remarks that said pipe was not the instrument used to strike Mitchell, stated: "Did Willie Mae Walker when she sat in her fifth floor window really see what happened or was it when the image came back to her from Mr. Emptage that she started to recall what she saw? A pipe was in somebody's hand * * * Didn't you see that pipe that was in somebody's hand? * * * Two men were arrested by the police. One of them had a pipe in his hand. Did anybody see a pipe? Nobody saw a pipe. Willie Mae Walker said she saw something * * * There was Mr. Emptage who said two men were caught with that long pipe. You saw it, although the judge threw it out, you saw it. You can't erase that from the mind as much as you try to. That is where that story began * * * Did anybody see the weapon in anyone's hand? No, nobody saw a weapon. They were wearing shirts, they were wearing pants; a pipe would bulge from the pants. A pipe secreted in the belt could easily be seen. A pipe lying on the floor? everybody would have noticed it * * * Now what about Willie Mae Walker? * * * And when you tell the story twenty or thirty times, you start believing the mistakes you made. You believe that when you said it was a long pipe that was a long pipe even if you saw nothing, because you said it so many times that you just can't help but believe it." The People in their lengthy summation also made numerous references to the victim's being struck in the head by the defendant, and on only *one* occasion made reference to a pipe, as follows: "There is no reason why these defendants deserve any kind of a

---

* Obviously, the prosecutor was placed in a "damned if you do and damned if you don't" position.

break. They robbed this man. During the course of the robbery, they struck him on the head with a pipe. They killed him." The trial court charged the jury at length, which charge was proper. In the course of their deliberations the jury requested testimony of Officer Vargas concerning the number of participants, of Mr. Jones concerning his approach to Mr. Mitchell (the victim) and Ms. Walker concerning who went into the victim's pockets. In light of the above, it is eminently clear that the single remark of the prosecutor in summation (to the victim's being struck with a pipe), viewed in context with defense counsel's summation, the other limited references to a pipe on this record, and the People's explicit communication to the jury that the pipe found on defendant's person at his arrest was not the blunt instrument used in striking the victim, did not constitute an egregious error which deprived defendant of a fair trial. Without foundation in the record and by pure subjective reasoning, the majority opines that the reference to the removal of a pipe from defendant by the People in the opening statement "Inevitably * * * led defense counsel to question a witness in an effort to confirm that the pipe was not, and could not be, the murder weapon." The People had already informed the jury that *this* pipe was not the murder weapon. Indeed, the record discloses a calculated attempt by defense counsel to utilize this pipe (admittedly not the murder weapon and not admitted into evidence) as a basis to cast doubt on the credibility of the People's witnesses, which attempt, in effect, serves as some justification for the fears uttered by the prosecutor as impelling an effort by the People to introduce the pipe in evidence with a clear communication to the jury that it was not the murder weapon. Trial by jury is an integral part of our system of justice. Its advocates, despite the attacks on the jury system, point with justifiable pride that this right to a trial by one's peers stands as a safeguard against tyranny and possible abuse of power by the State. Accordingly, we must give credit to the common sense and reason of our fellow man who sits as a juror in fulfillment of the responsibilities which our system of justice bestows on him. After reading this record and mindful of the strictures and tenets governing appellate review, one can only conclude that the jury found the People's witnesses credible, especially in this regard Ms. Walker and Mr. Jones. It is their testimony which the jury chose to believe. The convoluted reasoning of defense counsel that the People attempted to mislead the jury into concluding that defendant killed the victim with a pipe because a pipe happened to be found on defendant at the time of his arrest finds no support in this record. I find no basis for concluding that this jury was foolishly misled by the People into a wrongful finding. Indeed, the proof of guilt was overwhelming. To adopt defendant's contention that he was denied a fair trial by the conduct of the People at the trial is to be blind to the record and to ignore the strategy of defense counsel on summation in referring to matters not in evidence. It is, in essense, to run afoul of the famous dictum: "None so blind as those that will not see" (Commentaries, Jeremiah 20). Accordingly, the judgment of the Supreme Court, Bronx County, rendered March 12, 1976, convicting defendant, after a jury trial, of murder in the second degree (felony murder) should be affirmed.