■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL R. PALUMBO, Appellant.—Upon remittitur from the Court of Appeals, judgment, Supreme Court, New York County, rendered July 6, 1977, upon a verdict convicting defendant of receiving unlawful gratuities, affirmed for the reasons stated in the dissenting opinion on appeal herein (65 AD2d 443, 451-454). This court reversed defendant's conviction, and the Court of Appeals reversed and remitted the case for determination of the facts with respect to the suppression of defendant's statements (49 NY2d 928). Based upon our determination of those facts, and for the reasons set forth in the original dissenting opinion, we affirm. Contrary to the view in the present dissent of Justice Lupiano, we find no procedural obstacle to this court's review of the facts, *de novo*. It is clear that the admonition by the previous majority that it "would reverse and direct a new trial in view of the deprivation of a fair trial" *(People v Palumbo,* 65 AD2d 443, 449) is dictum, and thus not binding since it was not necessary to the decision. (See *Matter of Buehler v Board of Supervisors of Rensselaer County,* 260 NY 268; also *343 E. 77th St. Corp. v Bloom,* 45 Misc 2d 545.) Inasmuch as the previous determination by this court was to reverse and dismiss the indictment, the observation that it would direct a new trial in any event because of trial errors

was neither essential to, nor supportive of, its determination and was purely gratuitous. In addition, whether the doctrine "law of the case" applies when a matter is still on appeal and has not been remanded is an unanswered question since the general application of the doctrine has concerned "the effect of \* \* \* statements of law on the lower court, and the effect of \* \* \* rulings on the appellate court itself in a later appeal." (Note, Successive Appeals and the Law of the Case, 62 Harv L Rev 286.) Even when a second appeal is before the bench which has made previous determinations, the doctrine is less than inflexible. "In the absence of statute the phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power." *(Messinger v Anderson,* 225 US 436, 444.) In a case in which the Appellate Division chose, after dismissing defendant's first appeal on the issue of liability for failure to prosecute, to entertain consideration of the same issue on the second appeal, the Court of Appeals observed that it could not say that the Appellate Division's exercise of its "reserved power" in this instance was error as a matter of law and stated that *"Every court retains a continuing jurisdiction generally to reconsider any prior intermediate determination it has made". (Aridas v Caserta,* 41 NY2d 1059, 1061; emphasis added.) Recently, in *Matter of Catholic Med. Center of Brooklyn & Queens v Department of Health of State of N.Y.* (48 NY2d 967), the Court of Appeals affirmed an Appellate Division decision which ran contrary to a previous decision in the same case. The dissenter (Meyer, J.) claimed that the Appellate Division violated the doctrine of law of the case, but the majority did not address the issue. " '[L]aw of the case' is a rule of practice, an articulation of sound policy that, when an issue is once judicially determined, that should be the end of the matter as far as Judges and courts of co-ordinate jurisdiction are concerned" *(Martin v City of Cohoes,* 37 NY2d 162, 165). Although it sits in panels, the Appellate Division is one court and its panels are not courts of co-ordinate jurisdiction. Nor are we limited on this remittitur to only a review of the custody issue. The Court of Appeals expressly stated that the issue of the misuse of the taped conversation of defendant was "beyond the scope of our review" *(People v Palumbo,* 49 NY2d 928, 929-930). Thus the issue comes back to whether the majority's observation on the original appeal that it would direct a new trial in any event was a holding of this court or dicta. In *Getty v Roger Williams Silver Co.* (181 App Div 413), upon which one of the dissenters relies on the custody issue, the court, after receiving the remittitur from the Court of Appeals, justified its determination to remand, rather than to affirm, in part on the fact that it had not changed its mind since its previous decision. By its language the court implied that if, indeed, it had changed its mind, it would not have felt constrained by its initial determination. The Bench which decided the original appeal here and the Bench which has received the remittitur from the Court of Appeals are not, as already noted, courts of co-ordinate jurisdiction but constitute the same Bench, although one of the original Judges is no longer a member of this court. Under our constitutional system the new members of the panel are not the mere proxies of the original majority. Concur—Sullivan, J. P., Ross and Carro, JJ.; Markewich and Lupiano, JJ., dissent in separate memoranda as follows:

Markewich, J. (dissenting). I concur only in the alternative result suggested in Justice Lupiano's dissent: defendant-appellant should have a new trial, having been deprived of a fair one by reason of admission into evidence of an inculpatory statement, taken without appropriate *Miranda* warnings while he was in custody. This conclusion is derived from the facts alone. The appellant was virtually arrested by police at a railroad station as he was about to board a train to go to work, and continued to be under close surveillance thereafter while being conducted to the place of examination, there held until the questioning was completed without being permitted even to go to the bathroom alone. All that was lacking to convert this into a full-blown arrest was the use of handcuffs. In these circumstances, it cannot be fairly claimed that the questioning was not custodial. Nor is it a relevant factor that he had theretofore voluntarily appeared for questioning. It is significant that only in the presence of the described coercion did appellant say anything which inculpated him. As to the matter of misuse of appellant's taped conversations, we could have properly reviewed this error by exercise of discretion in the interest of justice. We did not, however, record such a basis for taking up this point, as is shown by a reading of the pertinent portion of our last decision (65 AD2d 443, 446-467), and it is now beyond reach.* At a retrial, however, appropriate objection could be made.

Lupiano, J. (dissenting). The instant case reflects an element of "chance" or "fate" somewhat at variance with my judicial philosophy, which is predicated on the search for objective truth and a minimizing of the subjective element in the decision-making process. Without engaging in an appraisal of the imaginative, as compared or contrasted with the purely rational basis underlying the processes by which appellate courts resolve the questions and issues brought before them, it suffices to briefly delineate the procedural history of this matter. Defendant was convicted, after a jury trial, of receiving unlawful gratuities. The defendant's subsequent appeal was heard by a four-man Bench, with the result that the majority of three concluded on this record that the interrogation of defendant at the time he made an inculpatory statement was custodial, as a matter of law, and that the failure of the authorities to give the required *Miranda* warnings rendered such statement inadmissible. Accordingly, the court concluded that the judgment convicting defendant should be reversed, on the law, and the indictment dismissed. The court also stated: "In any event, if we were not reversing and dismissing the indictment, we would reverse and direct a new trial in view of the deprivation of a fair trial" *(People v Palumbo,* 65 AD2d 443, 449). Upon the People's subsequent appeal to the Court of Appeals, that court declared: "We cannot agree that this interrogation was custodial as a matter of law, i.e., that under no view of the evidence in the record could it be found to be noncustodial. Accordingly, we hold that the determination of the Appellate Division *in this regard* was error. The case must, therefore, be remitted to the Appellate Division for determination of the facts under CPL 470.40 (subd 2, par [b]). *The other error on which the Appellate Division would have reversed*

---

* "The other error on which the Appellate Division would have reversed (and granted a new trial) — namely, misuse of the taped conversations of defendant — was not preserved for appellate review, no timely protest on this theory having been registered. Accordingly, that issue is beyond the scope of our review *(People v. Johnson,* 47 NY2d 124)." (49 NY2d 928, 930.)

*(and granted a new trial)*—namely misuse of the taped conversations of defendant—was not preserved for appellate review, no timely protest on this theory having been registered. Accordingly, that issue *is beyond the scope of our review" (People v Palumbo,* 49 NY2d 928, 929-930; emphasis supplied). The remittitur to this court limited to a factual determination on the issue of whether the interrogation was custodial or noncustodial comes before a somewhat different Bench—one of the three Justices formerly comprising the majority having left this court. Assuming the same Bench on the remittitur, the rationale of *Getty v Roger Williams Silver Co.* (181 App Div 413) would be most compelling. In that case, this court, on appeal from a judgment in plaintiff's favor, after a jury trial in a wrongful discharge matter, held that the evidence clearly demonstrated that "the question of the justification for the discharge * * * is a question of law" and that there being proper justification, the complaint must be dismissed (162 App Div 513, 516). "On appeal to the Court of Appeals that court considered that there was a question of fact in the case, in that * * * different inferences might be drawn therefrom. (221 N. Y. 38) Consequently the cause was remitted to this court for consideration of the weight of the evidence. Unless we are required by the Court of Appeals to draw different inferences from the facts than those which we drew upon the former appeal, which I do not understand to be the effect of the decision of that court, there is nothing left for us to do except order a new trial. On the former appeal we were of the opinion that the verdict was absolutely *against* the evidence. Being still of that mind we are obliged of necessity to hold that it is *against the weight* of the evidence" (181 App Div 413, 414-415). The remaining two Justices of the original majority of three acknowledging the force of the *Getty* rationale and the spirit of consistency mandated by the quite explicit and detailed record before this court as it pertains to the issue of whether the interrogation was custodial or noncustodial, find as a fact that the interrogation was custodial. That same spirit of consistency prevails upon the sole dissenter on the original appeal to adhere to his view that the interrogation was noncustodial. Thus, the two new Justices joining the dissenter in finding as a fact on this record that the interrogation was noncustodial, now constitute the new majority which has voted for affirmance of the conviction. With due respect to my colleagues of the new majority, a miscarriage of justice is the result. First, on this record, the same record which was before the court on the original appeal, a fair appraisal of the undisputed circumstances, coupled with reason and common sense, require the conclusion that a finding of noncustodial interrogation is clearly against the weight of the evidence. This view is urged, not out of blind devotion to the tenet of consistency, but as a reflection of objective truth. Second, in any event, the majority have clearly violated the principle of *the law of the case* in affirming the conviction and refusing the defendant the benefit of a new trial. The decision by the majority on the original appeal that "In any event, if (they) were not reversing and dismissing the indictment, (they) would reverse and direct a new trial in view of the deprivation of a fair trial" was beyond review by the Court of Appeals and was not subject to the remittitur from that court. "The effect of the law of the case is limited to a court of co-ordinate jurisdiction, which ordinarily should not disregard an earlier decision on the same question in the same case" (10 Carmody-Wait 2d, NY Prac, § 70:406). "So long as the facts remain the

same, a rule of law once laid down by the court of last resort remains the rule throughout the subsequent history of the cause in all its stages except under extraordinary circumstances" (10 Carmody-Wait 2d, NY Prac, § 70:405). On the issue of affording defendant a new trial because of deprivation of a fair trial, this court, on this record, is the court of last resort. We have already discussed and passed upon the question of whether defendant should be afforded a new trial because he was deprived of a fair trial *(cf. Rankin v Shanker,* 25 NY2d 780). The search for truth, devotion to justice, due regard for reason and awareness of the danger of an overly subjective approach, serve as bulwarks against arbitrary or merely fortuitous consequences in the appellate process. Whether the doctrine invoked be termed *res judicata, stare decisis,* or the law of the case, the underlying principle is the same—to protect against *sua sponte* arbitrary action or abuse of power. As so aptly stated by the Court of Appeals in *Rankin v Shanker (supra,* pp 781-782): "It is wisely established, as we had occasion to say some 70 years ago *(Matter of Laudy,* 161 N. Y. 429, 434-435) '[w]hen the court has jurisdiction of the cause and of the parties, its judgment is conclusive between the parties and their privies, not only in all other actions, but also in all other proceedings in the same action. *(Roberts v. Cooper,* 61 U. S. 467-481; Wells, Res Adjudicata, 370; Ram on Legal Judgments, 292; Herman on Estoppel, 274.)* The principle established in all jurisdictions is that so long as the facts remain the same, the rule of law once held by the court of last resort remains the rule throughout the subsequent history of the cause, in all its stages, except under extraordinary circumstances, which do not exist in this case.' " Indeed, in observing this "salutary principle" the Court of Appeals followed its *prior* view upon the precise question subsequently urged again by the appellants in *Rankin v Shanker (supra)* "solely *on constraint* of *Rankin v Shanker* (23 NY2d 111)" *(Rankin v Shanker, supra,* p 782; emphasis supplied). As one eminent legal scholar has declared: "Since the doctrine of *res judicata* technically requires a final judgment on the merits in one action and an attempted relitigation in a second, it has no application within an action. The doctrine of the 'law of the case' was devised to close that gap. It applies to various stages of the same action or proceeding; its purpose is to avoid the retrial of issues already determined in it. For practical purposes, the doctrine of the law of the case can be considered as a kind of intra-action *res judicata.* * * * The law of the case doctrine makes a decided point, within a case, binding not only on the parties, but on all other judges of co-ordinate jurisdiction. * * * A disposition claiming to be the law of the case will usually be found to be embodied in a court order, but that is not indispensable. If one *judge's decision on a point* is clear, it concludes other coordinate judges whether embodied in a formal order or not" (Siegel, New York Practice, § 448). The observation by the majority on the original appeal that error arose mandating a new trial to defendant because he was deprived of a fair trial phrased as follows "In *any* event, if we were not reversing and dismissing the indictment, *we would reverse and* direct *a new trial* in view of the deprivation of a fair trial" (emphasis supplied) was a considered reflection upon the question presented to this court, *inter alia,* as to whether defendant had obtained a fair trial. That issue was fully briefed by both parties on the original appeal. Defendant's motion, prior to trial, to suppress his statement of June 3, 1976, was denied. Accordingly, the statement was ad-

mitted by the trial court during the course of the jury trial. Defendant's appeal from the subsequent judgment of conviction brought up for review the propriety of the prior order denying his motion to suppress his statement. Thus, the briefs on the original appeal to this court from that judgment specifically discussed two critical issues—(1) whether the June 3 statement should have been suppressed and, apart from that issue, (2) whether defendant received a fair trial in light of other evidence introduced by the People at the trial. The latter issue was framed in the context of the propriety of the prosecutor's introducing evidence at the trial which the jury would interpret as an unwillingness on defendant's part to co-operate with the authorities in the investigation of unspecified and unrelated charges of "corruption" within the city's real estate department—matters immaterial to the instant charge and about which defendant may have had no actual knowledge, in that they partook of rumors, gossip and "loose" talk. Succinctly stated, defendant claimed that the People may not support their case against him by indirect reference to corruption within the city real estate department with the obvious implication that he was involved in other uncharged misdeeds. It was pointed out by defendant that this theme was further emphasized during cross-examination of him at trial and may not be condoned on the ground that it was an attempt to impeach his credibility, because there was no valid proof of any other wrongdoing on his part. The import of such cross-examination was to demonstrate that defendant was withholding information. Further, it was shown that on its direct case, the People questioned Deputy Commissioner Lupkin in such a manner as to convey the impression that the defendant was brought to the former's office on June 3, 1976, for the purpose of supplying information about "official corruption" and that defendant failed to co-operate in the investigation. The People's endeavor to justify this evidence on the ground that it was relevant to the issue of the voluntariness of the June 3 inculpatory statement by defendant misses the point. While this evidence may have obtained some relevance, it was completely immaterial, because all the People needed to show that the statement was voluntary, was the manner of defendant's delivery to the office, the mode of questioning and the circumstances directly related thereto. By bringing before the jury evidence that defendant failed to co-operate with the investigation into corruption with the city real estate department, under the guise of explaining why he was summoned to the office, the People impermissibly connected defendant with uncharged "corruption." It should be noted that, assuming the relevance of defendant's failure to co-operate outweighed consideration of materiality, the trial court was confronted with a delicate observance of defendant's right to a fair trial by giving appropriate rulings and guidance to the jury. The record herein, as the prior majority of this court duly noted, did not demonstrate that defendant received a fair trial. *It is* also noteworthy and *compelling* that the Court of Appeals, in reversing our prior determination and remitting the appeal to us, viewed the issue of the propriety of the refusal to suppress defendant's statement as both appealable and reviewable, whereas the other error on which we would have reversed and granted a new trial, to wit, the deprivation of a fair trial issue encompassing the "misuse of the taped conversations of defendant" was deemed nonreviewable. Simply stated, the Court of Appeals viewed the first issue—the suppression issue as presenting a question of law, whereas the second issue—

the fair trial issue involving misuse of the taped conversations, did not present a question of law only. *(It appears, therefore, that despite our prior determination and the view of that determination taken by the Court of Appeals,* I am the sole Justice of the original Bench invoking the law of the case doctrine in concluding that defendant is entitled on the remittitur to *at least* a new trial.*)* Accordingly, the statement by the majority on the fair trial question was not mere dicta and has the force of judicial utterance. "The rule of necessity to the actual determination, although a usually reliable guide in separating dictum from holding, cannot be followed in all cases * * * it is well settled that where a court passes upon certain questions presented to it for consideration, the fact that the determination of any one of these questions alone would have decided the case does not render the court's ruling upon the other questions dicta" (1 Carmody-Wait 2d, NY Prac, p 45). "It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter" *(Railroad Cos. v Schutte,* 103 US 118, 143; see, also, *People v Railway Express Agency,* 188 Misc 342, 344, affd 297 NY 703, reh den 297 NY 783). This court is, of course, not a court of subordinate jurisdiction to itself or other Appellate Division Departments. Accordingly, the doctrine of the law of the case applies to this court with respect to its own decisions. In effect, we are co-ordinate with ourselves as regards jurisdiction. As we perceptively noted in *Walker v Gerli* (257 App Div 249, 251): "The law of the case *in this court* is not binding on the Court of Appeals. If the present record were under consideration by the Court of Appeals, that court would not be circumscribed by an earlier decision of the Special Term * * * nor even of this court * * * There is no reason to apply a different rule when this court in the exercise of its appellate jurisdiction reviews an order of the Special Term of the Supreme Court * * * Surely, we are not required to accept a conclusion which we realize to be untenable *unless constrained* to do so *by a previous decision of this court in the same case"* (emphasis supplied). Two distinct aspects of the law of the case are (1) the effect of the appellate court's determination on a legal question on the lower court, and (2) the effect of such determination on the appellate court itself in a later appeal or in a subsequent stage of the same appeal. The fact that on a subsequent appeal in the same action or a subsequent stage of the same appeal in the same action, the membership of the appellate court has changed, does not eliminate the doctrine (5 Am Jur 2d, Appeal and Error, § 746). A successor appellate court is bound by the law of the case established by the predecessor appellate court.[1] The Supreme Court of the United States in *Roberts v Cooper* (20 How [61 US] 467, 481), perspicaciously declared, in applying the law of the case doctrine: "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, *or speculate of chances from changes in its members"* (emphasis supplied). As the doctrine of the law of the case is not one of inflexible law, but permits a reasoned exercise of a certain degree of discretion in its application, the better rule

---

1. "(I)t frequently is applied as a matter of judicial discretion or out of respect for the judgment of fellow judges at the same level of the judiciary" (5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.09).

is that "the doctrine ·should not be utilized to accomplish an obvious injustice, or applied where the former appellate decision was clearly, palpably, or manifestly erroneous or unjust. It has been pointed out, however, that although an appellate court, on a subsequent appeal, has the 'abstract power' to reach a result inconsistent with its decision on the first appeal in the same case, this power should be exercised very sparingly and only under extraordinary conditions and that the law of the case will not be re-examined in the absence of unusual circumstances leading to injustice or unfairness" (5 Am Jur 2d, § 750). The New York Court of Appeals, in applying the doctrine of the law of the case engendered by its own prior decision in the same action, declared: " 'All the material facts * * * presented by the present record, were in the record on the former appeal. The law of the case was determined * * * by the Second Division of this court. It would be contrary to the general rule and present an *unseemly spectacle* for this court in the same case, between the same parties, upon substantially identical facts, to reverse a judgment rendered by a co-ordinate branch of this court upon a full understanding of the facts and of the question of law involved, *even although if the case was res novo we might be of the opinion that the law of the case was erroneously adjudged.* * * * There is no iron rule which precludes a court from correcting a manifest error in its former judgment, or which requires it to adhere to an unsound declaration of the law. It may, for cogent reasons, reverse or qualify a prior decision, even in the same case. But *the cases in which this will be done are exceptional,* and the power should be sparingly exercised. Where by inadvertence a settled rule of law is supposed to have been overlooked, or a rule of property violated, the court affords by its rules an opportunity to have its attention again called to the matter before final judgment is entered. If the party against whom the judgment is rendered omits to avail himself of this opportunity, or if, having applied for re-argument, the application is denied and the case goes to a new trial on the law as declared, *the circumstances must be very unusual* which would justify the court in reversing its decision on a second appeal in the same case and upon the same facts. The decision is a precedent upon the point of law involved which the court may or may not follow in cases subsequently arising, but *in the particular case* it is "more than authority—it is a final adjudication" between the parties' " *(Cluff v Day,* 141 NY 580, 581-583; emphasis supplied). Thus, the effect of a prior ruling by an appellate court in a later appeal before that court, or in a subsequent stage of the same appeal before that court, "presents the problem of balancing the interest in foreclosing reconsideration of the prior decision with the desire for a just result . . . Most jurisdictions still consider the former adjudication binding except where the prior decision was 'clearly erroneous' or worked 'manifest injustice' " (Successive Appeals and the Law of the Case, 62 Harv L Rev 286). The law of the case is applicable to a criminal proceeding (see *People v Blake,* 35 NY2d 331; *People v Watson,* 57 AD2d 143, 145; *State v Phillips,* 324 SW2d 693 [Mo]; 4 Wharton's Criminal Procedure [12th ed], § 641)[2]. Apart from the aspect of finality served by the doctrine of *res judicata,* the law of the case and *stare decisis,* there lurks the spectre of an exaltation of form over substance and an element of "blind chance" in the refusal

---

2. It is noteworthy that the law of the case is being applied in this criminal matter not against, but for, the defendant's entitlement to a fair jury trial.

to grant defendant a new trial. To reiterate: on the original appeal the parties posed two key questions, both of which were considered by this court and passed upon, to wit, whether the defendant's inculpatory statement should be suppressed and whether the defendant was deprived of a fair trial. This court (one Justice dissenting) found that defendant was deprived of a fair trial (which finding was beyond review by the Court of Appeals) and that the statement should be suppressed as a matter of law. This court's decision was disturbed only insofar as suppression of the statement as a matter of law is concerned, the Court of Appeals viewing the issue as one of fact and remanding to us for such fact determination. Thus, despite the fact that our prior decision on a fair trial was in no way disturbed, was not subject to the remittitur, the new Bench chooses to exercise its power to affirm, *i.e.,* to ignore the prior decision of this very same court on this very same record doing a disservice to the concept of finality of judicial utterance without benefit of justification or unusual circumstances. In such action there might well be the seed of a tendency to a form of judicial arrogance, a tendency to be guarded against. The legal conclusion by this court on the original appeal that defendant was deprived of a fair trial is a conclusion of law which is beyond Court of Appeals review, only because the misuse of the taped conversations of defendant was not preserved for appellate review, no timely protest on this theory having been registered by defendant at trial (CPL 470.15, subd 6, par [a]). Thus, this court exercised its discretion in the interest of justice to recognize such error, and our recognition, apart from our resolution of the issue, is an act making our determination on the issue of fair trial one not " 'on the law alone' " (see *People v Johnson,* 47 NY2d 124, 127). Thus, our prior resolution of the issue of fair trial is clearly a legal determination, a ruling involving a question of law. In *People v Johnson* (61 AD2d 923), we reversed the judgment of conviction on the law and as a matter of discretion in the interest of justice and remanded the case for a new trial *solely* because of the view that defendant was deprived of a fair trial. The Court of Appeals noted that as our decision was predicated on prosecutorial misconduct to which no objection was taken by defense counsel, it was necessary for this court to exercise its discretion in recognizing such error, thus rendering our determination to be one "not on the law alone." Although the failure to object to the error which serves to deprive defendant of a fair trial at a time when the error complained of could readily have been corrected preserves no question of law *reviewable* in the Court of Appeals, the defendant *is not* thereby deprived of a forum in which his argument that he was deprived of the fundamental right to a fair trial can be heard. The Court of Appeals declared: "We recognize that the Appellate Division is statutorily empowered to 'consider and determine any question of law * * * involving error or defect in the criminal court proceedings which may have adversely affected the appellant' (CPLR 470.15, subd. 1), even though no protest was registered at the trial" *(People v Robinson,* 36 NY2d 224, 228). Perceived in these terms, subdivisions 4, 5 and 6 of CPL 470.15 are illustrative in nature and convey the distinction between a reversal on the law, a reversal on the facts, and a reversal in the interest of justice. The latter category is, in essence, a hybrid and, because of its dual nature, is subject to application of the law of the case doctrine. To hold otherwise is to derogate "The fundamental demand of our law * * * that

the accused shall have a fair trial, and that if that right has been infringed, not in respect of mere technicalities but in substantial matters, and however undesignedly, he shall have another opportunity to meet his accuser and establish his innocence" *(People v Becker,* 210 NY 274, 311). Thus, the error or defect depriving defendant of a fair trial having been protested at trial serves as a basis to reverse, on the law and direct a new trial (see CPL 470.15, subd 4, par [a]; *People v Brown,* 71 AD2d 918). The failure to protest which is required to present the question solely as one of law, requires that the form of the reversal by an intermediate appellate court be "in the interest of justice". Such failure does not otherwise detract from the reality of the claimed error or defect as presented by the record. "A decision of an appellate court must be adhered to at all future stages of the same case, unless overruled by a higher appellate court. This rule applies both to the trial court and the appellate court, and is not affected by any error which may be imputed to or found in the decision. In other words, it is the law of that case. It is a rule, not peculiar to any appellate court, but prevails generally" (Spelling, New Trial and Appellate Practice, § 691). Of course, the rule is qualified by the fact that the appellate court issuing such decision may refuse to follow the law of the case when the circumstances are exceptional, to wit, that it is demonstrated that manifest error was committed by the prior Bench or the interests of justice mandate departture from the prior holding. Here, there is simply no demonstration by the "new" majority herein of manifest error on the part of the "old" majority in the prior decision and the interest of justice warrants protection of the sacrosanct right of defendant to a fair trial, not a cavalier disregard of such right under a legal construction which endeavors to destroy the commonsense application of the law of the case under the circumstances herein. Indeed, the danger posed by the evident inclination of the "new" majority to ignore the law of the case doctrine by claiming either that it does not apply in any event to this court—an abstract principle—or, that it does not apply in this particular matter because the prior holding on the fair trial issue is "mere" dicta (a patently incorrect appraisal and characterization of the legal utterance made by the prior majority on the fair trial issue) is ably summarized, as follows: "In all questions of remedy, where the opinions of judges may be as various as the differences of the human mind admit of, the interposition of a new judge might change the law which has been settled * * * Cases which have been brought to the court * * * and determined, may be reopened, and rights which have grown up under them be disturbed. The evil may extend to practice and pleadings in the inferior courts, and the whole administration of justice thrown into doubt and confusion by every change on the bench, but by letting those judgments stand which have already passed through the appellate court, no inconvenience can result, as new rules will operate upon future and not upon past controversies" (Spelling, New Trial and Appellate Practice, § 691). To reiterate: "It is the general rule that a determination by an appellate court becomes the law of the case, so that upon a subsequent trial or appeal, if the facts appear substantially the same, the prior determination should be followed. This does not mean that a higher court is required to follow the determination of a lower court but does mean that the lower or *the same court must abide by the prior determination in the same case.* * * * While it is the duty of an appellate court to follow its former decision in the same case

on a subsequent appeal, the court is not precluded from correcting a manifest error in its former judgment, and it may, for cogent reasons, reverse or qualify a prior decision" (Baylies, New Trials and Appeals, pp 760-762). In recognizing the application of the law of the case to an appellate court, the Third Department, in *Trombley & Carrier Co. v Seligman* (133 App Div 525, 526, 527) observed that the appellate court may ignore the doctrine in correcting manifest error in its former decision, but that it must do so "for cogent reasons" and that "the cases in which this will be done are exceptional and the power should be sparingly exercised." The Third Department determined under the circumstances therein that "it is our duty to follow and abide by our former decision" *(Trombley & Carrier Co. v Seligman, supra,* p 527). Despite language in the majority memorandum indicating a tentative view that the law of the case does not apply to this appellate court because it is "one court and its panels are not courts of co-ordinate jurisdiction", it is beyond cavil that the law of the case applies to appellate courts (see *Reoux v First Nat. Bank of Glens Falls,* 16 NY2d 685, 686; *Van Valkenburgh, Nooger & Neville v Hayden,* 44 AD2d 412, 413; *Diamond v Liberman,* 43 AD2d 620; *Morgan v Travelers Ins. Co.,* 23 AD2d 797; *Davis v Caristo Constr. Corp.,* 19 AD2d 518; *Flores v Bliss Co.,* 18 AD2d 1058; *Politi v Irvmar Realty Corp.,* 13 AD2d 469). The policy underlying the proper application of the law of the case doctrine at the Appellate Division level was described by this court in *the Politi v Irvmar Realty Corp. (supra)* in the following manner: "On the prior appeal this court, however, impliedly held that plaintiff had established a prima facie case * * * The present court *does not feel free to consider the otherwise cogent arguments* made by defendant, that the complaint should be dismissed as a matter of law, *because of the doctrine of the law of the case.* Although *not an absolute mandate on the court, the doctrine* is one that *rests in a sound policy not to be ignored except in extraordinary circumstances (Hornstein* v. *Podwitz,* 229 App. Div. 167, 169; but see limiting affirmance 254 N. Y. 443, 450; *Williams v Board of Trustees,* 210 App. Div. 161, 162; see, also, *Barcelo* v. *Horn & Hardart Co.,* 11 A D 2d 651; 5B C. J. S., Appeal and Error, §§ 1821-1824, 1964, generally, and especially at subd. c, par. [3], [p. 567] and subd. d [p. 570] ; Note: Conclusiveness of Prior Decisions on Subsequent Appeals, 34 L. R. A. 321)." (Emphasis supplied.) Finally, the majority herein has violated the law of the case set forth by the Court of Appeals (a court superior to this tribunal) in its decision to reverse herein. That court specifically declared that it was remitting this case to this court "for determination of the facts with respect to the suppression of defendant's statements" alone (49 NY2d 928, 929, *supra)*. There is no declaration by the Court of Appeals, explicit or implicit, that it was remitting the case to us for reconsideration of our prior view that defendant had been deprived of a fair trial because of misuse of the taped conversations of defendant. Indeed, the Court of Appeals, in unequivocal language, appropriately noted that this other error upon which we would reverse and direct a new trial was a fair trial issue, inherently bound up with the misuse of the taped conversations—a point fully briefed on the original appeal to this court (i.e., fully raised and explored on the record). The new majority, acts as if the Court of Appeals did, in fact, review the fair trial issue and opened it up for further consideration by this court, which is clearly not what happened. To view the holding by the majority on

the original appeal that it would, in any event, grant at the very least a new trial to defendant, because he was deprived of a fair trial, as "mere" dictum, ignores the true reality of that utterance as a legal conclusion or statement, ignores the status given that statement, by the circumstances contained in the original record (the same record on remittitur), and by the majority and the sole dissenting Justice on the original appeal and also ignores the status given to such statement by the Court of Appeals in recognizing it as "The other error on which the Appellate Division would have reversed." Obviously, if the statement were "mere" dicta and not part of the *ratio decidendi,* or if the statement was not bound up in the determination by this court in some manner, it would not be necessary for the Court of Appeals to address such issue in its review of our prior determination. It is self-evident that the Court of Appeals of necessity had to and did address the fair trial issue as bound up in our prior determination to reverse, and responded to the urgings of the parties seeking review of such issue by declaring that the issue, as determined by this court, was beyond the scope of the Court of Appeals review. In this connection the view of my fellow dissenter, Justice Markewich, correctly perceives that in writing the majority opinion on the original appeal, I did not record a discretionary basis for our reversal, predicated upon defendant's being deprived of a fair trial, to wit, that such reversal was in the interest of justice. However, such oversight does not alter the fact that this issue was fully raised and briefed on the original appeal, was fully explored at the oral argument before this court on the prior appeal, was fully discussed at the conferences held by the prior Bench in its deliberation upon the original appeal, and was agreed upon by the majority during such deliberative process to constitute one of the two bases for reversal. Nothing can detract from the reality of the aforesaid and from the fact that in drafting the majority opinion, I embodied the view of the majority on this point by declaring that "In any event * * * we would reverse and direct a new trial in view of the deprivation of a fair trial" (65 AD2d 443, 449). The verity of the aforesaid is further attested to by the salient fact that that sole dissenter on the prior Bench, in recognition of the basis upon which we determined that defendant had been deprived of a fair trial, was compelled to fully illustrate the gravamen of his departure from the majority view respecting the use of the taped conversations. The commonsense reality of the reasoning underlying the prior majority's conclusion to reverse, in any event, because defendant had been deprived of a fair trial, was fully appreciated by the Court of Appeals in *its clear recognition* of that basis, as follows: "The other error on which the Appellate Division would have reversed is *misuse of the taped conversations"* (emphasis supplied). The Court of Appeals did not disturb in any manner the legal conclusion by the prior Bench of this court that "In any event * * * we would reverse and direct a new trial in view of the deprivation of a fair trial." In making such statement, in uttering such a legal conclusion, of necessity there is implied the requisite exercise of discretion to recognize the appellate status of the fair trial issue, assuming no timely protest on such theory was made by defense counsel at trial. Accordingly, in determining that the fair trial issue was beyond the scope of its review, the Court of Appeals did not, in fact, review our determination of the fair trial issue and left it undisturbed, i.e., it left standing, unaffected by the limited scope of the remittitur, our prior legal conclusion that defendant had been

deprived of a fair trial and, of necessity, left undisturbed the requisite implied predicate for that conclusion—the exercise of discretion in the interest of justice. The sacrosanct right of a defendant to a fair trial may not be undermined or ignored, or put off by an exaltation of form over substance. I choose not to reject the law of the case set forth in the Court of Appeals decision on the appeal to that court from our prior determination (49 NY2d 928) and not to ignore the application of the law of the case posed by our prior determination insofar as it pertains to the instant remittitur to this court. Simply stated, defendant in justice should not and must not be penalized for a technical oversight in the draftsmanship of the original majority opinion, assuming there is such an oversight and assuming it has any significance whatsoever.[3] The irony is that the new majority have determined to affirm, and there will be no retrial whereby "appropriate objection could be made", as claimed by my fellow dissenter. Under such judicial reasoning, the law of the case doctrine is removed, thus effectively foreclosing defendant from obtaining a new trial because he was deprived of a fair trial, the very ground in which Justices Evans and Markewich concurred with me on the prior appeal. Obviously, where an appellate court entertains an appeal, it has three options in disposing of the matter—it may affirm, modify or reverse. On the original appeal we determined to reverse with regard to the two issues addressed by the parties and to which this court's attention was directed—the custodial interrogation issue and the fair trial issue. In pragmatic terms, the effect of such determination to reverse would result on the first issue (the interrogation issue) in dismissal of the indictment and on the second (the fair trial issue) in directing a new trial. As a consequence, a direction to the parties to proceed to a new trial would be a futile gesture, because the dismissal of the indictment would leave nothing to be tried. The consequences in terms of result—dismissal of the indictment or a new trial—do not detract in any manner from the fact that we determined on the original appeal *to reverse* because defendant was in custody when interrogated without benefit of *Miranda* warnings *and* because he had been deprived of a fair trial. Finally, the proper observation of the law of the case serves to strengthen the morale of the court and to augment its spirit of collegiality. The obverse proposition follows: that failure to observe the doctrine, where it is appropriate, detracts from the spirit of collegiality and impinges on the morale of the court. I am in full accord with the majority observation that the new members of the panel are not the mere proxies of the original majority. The essence of my position is that, in light of the doctrine of the law of the case which is clearly applicable herein, it is incumbent upon the majority to demonstrate cogent reasons for their conclusion on the fair trial issue, to particularize how the prior determination to afford defendant a new trial (because of deprivation of a fair trial) was manifest error, and to set forth the exceptional circumstances warranting their departure from the law of the case doctrine. The majority refuse to do so under their proclamation that the law of the case simply does not apply herein. This is the key issue. In light of the aforesaid, it is concluded that the judgment of conviction should be reversed and the indictment dismissed, because the interrogation was clearly custodial as a question of fact, and that, in any event, the defendant should, at

---

3. It is noted that defense counsel did object during the course of trial to the *use* the prosecutor was making of the taped conversations of defendant.

the very least, obtain a new trial, because of our prior holding that he was deprived of a fair trial.[4]

---

4. Of course, the law of the case does not apply to pure questions of fact, and it is recognized that the new majority are not encumbered by our prior holding respecting the issue of custodial interrogation, however unseemly the result in the "eyes" of the dissent. Insofar as the issue of deprivation of a fair trial is concerned, the new majority's exercise of power to refuse to follow the law of the case (and even apart from invocation of that doctrine), constitutes an abuse of power, as a matter of law, because it is based on no exceptional or unusual justifying circumstances, ignores the reality of the record and serves to frustrate the fundamental and cherished right of a defendant to obtain a fair trial.