OPINION OF THE COURT
D. Bruce Crew, III, J.
Following the indictment and arraignment of the defendant on the above-captioned indictment his attorney moved the court, pursuant to CPL article 710, for an order suppressing the use in evidence of certain self incriminating evidence which the People intend to offer as part of their direct case.
*650 The People oppose the motion and, as a result, an evidentiary hearing was held before the court on October 6,1983.
FINDINGS OF FACT
On February 13, 1983, Investigator Charles Bernhardt of the New York State Police was investigating a burglary perpetrated at Ye Olde Gin Mill in Lansing, New York. During the course of that investigation he learned that defendant had been drinking there shortly before the burglary and was one of the last people to leave. With that information he went to the home of Michael Manley and spoke with his mother and stepfather, Mr. and Mrs. Zifchock, concerning his investigation and his suspicion that Michael might have been involved. During that conversation attorney Joseph Joch phoned the Zifchock residence and spoke with Mrs. Zifchock. The purpose of that phone call was to discuss a social engagement between Mr. and Mrs. Joch and the Zifchocks and while the attorney was speaking with Mrs. Zifchock he was advised of the investigator’s presence and his purpose. Attorney Joch then spoke telephonically with Investigator Bernhardt, identified himself, advised the investigator he was a friend of the family and told him that if he were to pick up Michael Manley he was not to talk with him concerning the investigation.
Prior to the aforesaid telephone conversation the investigator and the defendant’s mother and stepfather had spoken at some length and the Zifchocks were desirous that their son be “picked up” and incarcerated. Following the investigator’s brief communication with attorney Joch he told the Zifchocks that his hands were tied and that he would not be able to pick up their son and talk with him. Following that remark Mrs. Zifchock called attorney Joch and told him she wanted Michael picked up, whereupon Joch again spoke with the investigator telephonically and told him to forget that he ever talked with him, that he would not be representing Michael Manley.
Following the second conversation with attorney Joch, which was approximately 1 o’clock in the afternoon, Bernhardt left the Zifchock residence and went to the Meadow Court Motel where Michael Manley was located. He went into defendant’s motel room, identified himself, told defen *651 dant that he was investigating a burglary at Ye Olde Gin Mill and that he wanted to talk with him at the State Police station in regard thereto. While in Michael’s room he conducted a search and then left taking the defendant with him. They arrived at the State Police barracks and went directly to a BCI office where the defendant was given the Miranda warnings following which Investigator Bernhardt questioned him concerning his complicity in the burglary under investigation. The defendant denied any involvement. During the course of that questioning the investigator received a phone call from the mother of the defendant’s girlfriend and shortly thereafter the mother and girlfriend arrived at the barracks. The investigator conferred with them in the absence of the defendant whereupon he reconfronted the defendant advising him that he knew defendant was not telling.him the truth, at which point the defendant gave a written inculpatory statement. Following that statement the defendant was placed under formal arrest and arraigned at approximately 7:15 in the evening, some five or six hours after Investigator Bernhardt first confronted him. Neither upon initial contact nor during that entire period of questioning was the defendant advised that he was free to leave. Finally Investigator Bernhardt quite candidly conceded that prior to the defendant’s inculpatory statement made at the State Police barracks he had no probable cause for an arrest.
CONCLUSIONS OF LAW
Defendant urges that at the time of the initial telephone communication between attorney Joch and Investigator Bernhardt the defendant’s State constitutional right to counsel “indelibly” attached (People v Settles, 46 NY2d 154) and his subsequent waiver of that right at the time of the taking of his written statement was ineffective because it was made in the absence of counsel (People v Hobson, 39 NY2d 479).
The People urge that the initial conversation between attorney Joch and Investigator Bernhardt was of no legal significance because the defendant was unaware of Joch’s representation and, in any event, Joch’s subsequent withdrawal as attorney obviated any legal representation issue. The first proposition is legally untenable while the *652 second may have some validity. However, the issue may be disposed of without a determination in that regard.
The Court of Appeals has made it clear that the right to counsel attaches once an attorney has communicated with the police for the purpose of representing the defendant (People v Arthur, 22 NY2d 325) and this is so even where counsel entered the proceedings by reason of the defendant’s family and without his knowledge (People v Garofolo, 46 NY2d 592). It follows, therefore, that if the defendant’s constitutional right to counsel had indelibly attached by reason of the initial conversation between the investigator and attorney Joch it could thereafter be waived only by the defendant in the presence of counsel, since the right is personal to the defendant. The court holds, however, that the somewhat peculiar facts of this case justify the conclusion that the defendant’s right to counsel was never invoked and therefore never attached.
While the courts have not appeared to address the issue, it strikes this court that where a third party purports to invoke an accused’s rights by retaining an attorney there must be an express or apparent authority to do so and, likewise, where an attorney undertakes to represent a defendant there again must be authority to do so. In the case at bar the facts indicate that attorney Joch, having learned from Mrs. Zifchock about the investigator’s presence and his purpose, gratuitously undertook to advise the investigator what he could or could not do with regard to the then suspect Michael Manley. This becomes all the more clear when Mrs. Zifchock called Joch back and, as a result of that conversation, Joch informed the investigator that he would not be representing the defendant. While the language in People v Marrero (51 NY2d 56). might be understood to indicate that Joch’s subsequent withdrawal from the case would be sufficient to permit the subsequent questioning of the defendant, the court finds as a matter of fact that he was never authorized by defendant or his family to represent the defendant and that his remarks to the investigator were gratuitous. That being the case the defendant’s right to counsel never attached.
Defendant further urges that when he accompanied Investigator Bernhardt to the State Police barracks he was in *653 “custody” for Fourth Amendment purposes. The People contend that the defendant “voluntarily” accompanied the investigator to the State Police barracks, that the ensuing questioning did not constitute custodial interrogation and that there are, therefore, no Fourth Amendment considerations.
It is clear that a suspect may be “seized”, in the Fourth Amendment sense, for the purposes of interrogation without having been formally arrested and if such a seizure occurs without probable cause any subsequent statement will be inadmissible unless there is sufficient attenuation between the illegal seizure and the incriminating statement (Dunaway v New York, 442 US 200).
In the case at bar, it appears from the conversations between Bernhardt and the defendant’s parents that the investigator was bent on “picking up” defendant to secure a confession in order to be able to arrest him. To be sure, the controlling factor in cases such as this is whether a reasonable person, innocent of any crime, would have thought himself in custody under the same circumstances rather than the subjective state of mind of the investigator (e.g., People v Palumbo, 49 NY2d 928, revg 65 AD2d 443, on remittitur 79 AD2d 518; People v Yukl, 25 NY2d 585; People v Rodney P., 21 NY2d 1). However, the purpose of the investigator is instructive in evaluating how his demeanor on the afternoon and evening in question might bear upon the former. Here the defendant was confronted by a police officer who told him that he wanted to speak with him at the station about a burglary he was investigating and before leaving with the defendant for the station the officer searched defendant’s motel room in the presence of the defendant. At the station the officer interrogated the defendant for a period of about four hours. Significantly, he never told the defendant that he was free to leave.[1] When the defendant denied his involvement in the burglary the investigator left to speak with defendant’s girlfriend and her mother. He then returned and accused the defendant of lying whereupon he obtained the incriminating evidence.
*654 While no single factor can or should be determinative of the issue of custodial interrogation, a combination of all pertinent factors should demonstrate to the court, on the basis of the objective realities, whether the defendant was in custody (People v Balint, 92 AD2d 348).
The court holds that in light of all of the surrounding circumstances in this case[2] the defendant was in custody at the time of the inculpatory statement and that such custody was without probable cause.
The only remaining question is whether the statement made during the illegal detention should be suppressed as the product of that detention Wong Sun v United States, 371 US 471). It is clear that a significant intervening event may be sufficient to attenuate the taint of the original illegal detention Wong Sun v United States, supra; People v Rogers, 52 NY2d 527). The only such arguable event in this case is the appearance of the girlfriend and her mother during the course of defendant’s detention. Had the girlfriend made a clear and unequivocal statement implicating defendant in the burglary and had that been brought home to defendant this case might well come within the rationale of People v Rogers (supra). However, on this record the court is left to speculate in that regard. The case at bar, therefore, seems more akin to Dunaway v New York (supra), since the initial detention was solely for investigative purposes when probable cause did not exist.[3]
In view of the foregoing, the court concludes that the self incrimination evidence which the People intend to use against the defendant was the product of an improper custodial interrogation and is inadmissible.

. In the majority of the “voluntary accompaniment” cases the courts have placed very significant weight on the fact that defendant was advised that he was free to leave (e.g., Beckwith v United States, 425 US 341; People v Wilson, 96 AD2d 653; People v Yanus, 92 AD2d 674).

. To wit: where and how defendant was picked up, the place of interrogation, the length of time of interrogation, the failure to make defendant aware of his freedom to leave and the assertion that defendant was lying when faced with his denials.

. As stated so plainly by Investigator Bernhardt: “I told Shary Zifchock and Carl that I probably would not arrest Michael that day, because without being able to interview him, I would have probably insufficient evidence to arrest him.”