THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARIO MANDRACHIO, Appellant.

First Department, March 3, 1981

APPEARANCES OF COUNSEL

*Steven M. Jaeger* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Allen H. Saperstein* of counsel *(Billie Manning* with him on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

OPINION OF THE COURT

LUPIANO, J.

Defendant appeals from a judgment convicting him, after a jury trial, of murder in the second degree and assault in the first degree. He was sentenced to concurrent indeterminate terms of 25 years to life on the murder count and 5 to 15 years on the assault count. The proof of defendant's guilt was overwhelmingly established on the record herein. Defendant's girlfriend testified that on December 31, 1973, she, the defendant and one Edwards had been drinking. While in defendant's room in a rooming house, Edwards, in defendant's absence, touched Ms. Norris' breasts. Defendant, returning from the bathroom, observed this incident, began punching Edwards and then grabbed a carpet knife which he used to repeatedly stab the unarmed Edwards. Ms. Norris fled downstairs to the room of Jesus Santiago. Being informed by Ms. Norris of what was transpiring, Mr. Santiago went upstairs to the defendant's room and in the hallway saw defendant repeatedly stab the deceased (Mr. Edwards) and then throw the deceased's body out of the hallway window. Frightened, Santiago returned to his room, soon followed by defendant who proceeded to stab Santiago some five or six times in the chest and stomach. Defendant desisted in his attack at the urging of Ms. Norris. Mr. Santiago barely survived this violent attack.

The only issue which appears to be troubling to some members of this court is whether two statements of defendant introduced at trial should have been suppressed at the pretrial *Huntley* hearing (held before defendant's first trial, the instant trial being his second trial for these violent crimes) in that they were obtained in disregard of defendant's *alleged* refusal to make a statement and defendant's *alleged* assertion of his right to counsel. At the pretrial *Huntley* hearing, defendant admitted that he had been previously convicted of other crimes and that on those

occasions he had been advised of his rights and was familiar with them. He, in effect, conceded that he was not a novice in the war between society and its criminal element. At the time of his arrest, two weeks after the commission of the violent crimes alluded to above, defendant, who was accompanied by a friend "Duke", was given full *Miranda* warnings. Defendant responded: "I know all about that shit, but what's this all about?" He also nodded that he understood the warnings.

At the precinct and after being informed of the death of Edwards, defendant was asked if he wished to make a statement. Defendant replied: "Do you think I'm * * * crazy or what?" The detective then asked defendant if he wanted to talk to his friend "Duke". The defendant requested such opportunity, and after a private conversation with "Duke", volunteered (in a tape-recorded conversation admitted at trial) that he found Edwards making several advances to his (defendant's) girlfriend; that Edwards pulled a knife during the fight; that Santiago joined in the melee, during the course of which both Santiago and Edwards were stabbed and Edwards "fell" out the window.

Defendant initially claims that this first statement is inadmissible because, although the police informed him that he had a right to counsel and that if he could not afford one, one would be assigned free of charge, they did not apprise him of his *contemporaneous* right to counsel, i.e., they informed him only of his right to an attorney and did not include an admonition that he had the right to have an attorney present at the interrogation. This claim is without merit, as the warning given by the police was an adequate notification to defendant of his right to counsel (see *People v Thomas*, 69 AD2d 792). It is clear that defendant volunteered his first statement after receiving the *Miranda* warnings and indicating complete awareness of his rights and after the private conversation with his friend.

Defendant's second claim regarding his first statement is that it is inadmissible because the police failed to honor his decision not to speak, but continued the interrogation (as distinct from a subsequent request, made otherwise than in the course of a continued interrogation, for recon-

sideration of an earlier decision to make no statement, which request is accompanied by a reiteration of the requisite *Miranda* warnings [see *People v Gary*, 31 NY2d 68]). The transcript of the *Huntley* hearing discloses that the police ceased questioning when defendant replied—"Do you think I'm * * * crazy or what?" Instead, they permitted defendant to confer in private with his friend "Duke". There is no proof that "Duke" was a police agent who then persuaded defendant to speak. It is clear that the exculpatory version of the incident then given by defendant after his private conversation with "Duke" was the product of a voluntary decision by defendant who was well aware of his rights. Parenthetically, defendant, who chose to testify at the *Huntley* hearing, specifically admitted that, by virtue of being convicted on prior occasions of crimes, he was "familiar with it as far as the rights. Like, I didn't have to say nothing or anything like that." He further unequivocally admitted that he "was familiar with them" (the rights delineated by the *Miranda* warnings) at the time of his arrest, subsequent interrogations, and the events related thereto. Indeed, defendant admitted at the *Huntley* hearing that he volunteered his statements—"I told them, I'll give you the story. Do you want to hear a story * * * I said, I'll give you a story." The commonsense perception of the record herein as unequivocally demonstrating a voluntary uncoerced decision by a well-informed and knowledgeable defendant to waive his right to remain silent is further reinforced by the subsequent volunteering of a second statement by this defendant.

Shortly after making his first statement, defendant was taken before an Assistant District Attorney who reiterated the full *Miranda* warnings. Defendant acknowledged *separately after each Miranda warning* that he understood such admonition upon being questioned by the Assistant District Attorney as to whether he understood that particular warning. The transcript of the Assistant District Attorney's taking of defendant's second statement in pertinent part is as follows:

"Q. You have the right to remain silent, do you understand that?

"A. Yes.

"Q. Anything you say to me can be used against you in a court of law.

"A. Yes.

"Q. You have the right to an attorney now or in the future, do you understand that?

"A. An attorney wasn't there when it happened.

"Q. Mr. Mandrachio, what I'm saying is that you have the right to an attorney now or in the future.

"A. Yes. [Defendant did not at this point request an attorney, but merely acknowledged that he understood the admonition.]

"Q. If you can't afford one, one will be given to you free of charge.

"A. I can't afford one.

"Q. Have you understood everything I have told you?

"A. Yes.

"Q. Having understood everything I told you I would like to ask you about the death of Anthony Edwards.

"A. Who?

"Q. Tony Edwards. I'd like to ask you some questions about his death and Jesus Santiago, will you answer those questions?

"A. I'll answer them. Santiago was drunk at the time." Defendant's statements that an attorney was not present at the time the crimes were being committed and that he could not afford an attorney do not amount to a "clear and categoric" request for counsel (cf. *People v Woodard*, 64 AD2d, 517, 518).*

---

* In *People v Woodard* (64 AD2d 517, 518) this court characterized the defendant's request for counsel as "clear and categoric". In the instant matter, Mandrachio's request does not obtain those characteristics. A verbal response or statement by a defendant in the course of investigation or interrogation should be evaluated not in isolation, but in relation to the surrounding mosaic of circumstances and dialogue. This commonsense approach relieves untoward reliance on isolated incidents or utterances which are, by themselves, unclear or ambiguous, but which obtain a marked degree of clarity and certainty when viewed in context with surrounding events. Further, this commonsense approach honors the dispassionate appraisal of facts and the search for truth demanded by justice, and observes the balance between the rights and duties of the citizen on the one hand and society on the other in the various processes of our criminal justice system.

Defendant's plaint on appeal that he did not receive adequate *Miranda* warnings, that his initial refusal to make a statement was not honored, and his free will was overborn by continued questioning so that he did not voluntarily waive any of his rights, may be characterized in the same fashion as defendant originally described the *Miranda* admonitions when he was arrested. I have on a prior occasion acknowledged—"a perception of law as founded on reason and common sense, having as its goal the dispensation of justice based upon the ascertainment of truth. In striving to apprehend the truth, the law, realizing the limitations of human nature and concerned with the practical application of abstract reasoning in the 'real' world, has of necessity evolved a complex and interlocking mosaic of rules and principles, both procedural and substantive. The nature and relative viability of these rules and principles, viewed singly or in conjunction with each other, have as their ultimate end, not the frustration of truth and the impairment of freedom, but the realization of truth and the enjoyment of freedom. Indeed, 'The truth shall make you free' (St. John 8:32). Nevertheless, the means to an end may occasionally assume the aspect of an end in itself. Thus, the rules and principles of the law may sometimes be viewed as an end in itself, without any relevance to the discernment of truth" *(People v Woodard, supra,* at p 519).

The instant appeal is from the judgment convicting defendant after his *second* jury trial. In reversing the judgment of conviction after defendant's first jury trial we noted: "[d]espite *strong evidence of guilt in this sordid case,* prejudicial errors in the charge require that it be tried again" (63 AD2d 622; emphasis supplied). A defendant is entitled to a fair trial, not a perfect one. He is also entitled on appeal not to a ferocious ferreting out of any error in "blind" zeal to overturn a conviction, but to a dispassionate, reasoned and commonsense appraisal of the record, having as its goal the ascertainment of truth founded on due regard for significant (e.g., constitutional) error. In light of the aforesaid, it is concluded that no proper basis is demonstrated for affording this defendant yet another trial.

■ Finally, defendant claims that the trial court erred

in its charge on justification and intent. Defendant did not preserve these issues for appellate review, and the interest of justice would not be served by granting defendant a third trial in this case of "strong evidence of guilt". Moreover, contrary to defendant's assertion, the trial court repeatedly informed the jurors that the defense of justification was applicable if defendant was endeavoring to stop a sexual attack on Ms. Norris. This aspect of the justification defense was not "downplayed" as defendant contends, but was sufficiently delineated in the charge.

As for the charge on intent, review of the charge as a whole discloses that the trial court did not urge a conclusive, mandatory presumption, but urged that the inference is permissive and it is for the jury to decide after considering all the circumstances. The mere fact that a portion of the charge may be susceptible to an interpretation as having a contrary effect is of no avail in the absence of defendant's objecting to the charge *at trial (People v Thomas*, 50 NY2d 467; see *People v Getch*, 50 NY2d 456).

Accordingly, the judgment of the Supreme Court, Bronx County, rendered January 30, 1979, convicting defendant, following the denial of his *Huntley* motion (D. SULLIVAN, J.) and after jury trial (ROSENBERG, J.), of murder in the second degree and assault in the first degree, should be affirmed.

CARRO, J. (dissenting). As indicated, the rendition of the *Miranda* warnings by the prosecutor proceeded in part as follows:

"Q. Mr. Mandrachio, what I'm saying is that you have the right to an attorney now or anytime in the future.

"A. Yes.

"Q. If you can't afford one, one will be given to you free of charge.

"A. I can't afford one.

"Q. Have you understood everything I have told you?

"A. Yes.

"Q. Having understood everything I told you I would like to ask you about the death of Anthony Edwards."

The implication from defendant's response that "I can't afford one" might well be, "therefore give me one free of charge". At the very least, his intent is ambiguous. The burden of proof as to voluntariness, and therefore as to knowing voluntary waiver, is on the People to establish beyond a reasonable doubt *(People v Huntley*, 15 NY2d 72, 78). When an ambiguity exists as to the defendant's state of mind, or as to whether counsel is being requested during the *Miranda* warnings, it is the obligation of the prosecutor not to ignore or gloss over the possible implications of the defendant's response and proceed as if nothing had occurred, but to make inquiry to clarify that ambiguity and to specifically advise the defendant at that point that assigned counsel will be provided, if desired, before the questioning proceeds. The burden is not and has never been on the defendant to prove that his request for counsel was "clear and categoric".

"His statement should have been suppressed even if his request for an attorney be considered an ambiguous one, as the People urge, for whatever ambiguity was created existed because of the prosecutor's failure to clearly and effectively explain to defendant * * * what the right to counsel consisted of. And if the prosecutor was in doubt as to whether defendant had indeed relinquished his right to counsel it was incumbent upon him not to play fast and loose with that precious right but rather to insure it was protected." *(People v Woodard*, 64 AD2d 517, 518.)

"The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warnings of the right to remain silent and of the general right to counsel, only by effective express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it." *(Miranda v Arizona*, 384 US 436, 473.)

"No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead." *(Miranda v Arizona, supra*, at pp 471-472.)

The District Attorney did not fulfill his obligation and

has not met his burden. The conviction should be reversed and the matter remanded for a new trial.

SILVERMAN and BLOOM, JJ., concur with LUPIANO, J.; FEIN, J. P. and CARRO, J., dissent in an opinion by CARRO, J.

Judgment, Supreme Court, Bronx County, affirmed.