■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT TAYLOR, Appellant. — Judgment, Supreme Court, Bronx County (D. Sullivan, J., at trial and sentence; Bloom, J., at suppression hearing), rendered on December 6, 1979, affirmed. Concur — Sandler, J. P., Lupiano and Milonas, JJ., in separate memoranda; Carro, J., dissents, as follows.

Sandler, J. P. (concurring). If the issue were presented to this court for the first time on this appeal as to whether the record adequately supported the hearing court's determination that the defendant did not request counsel at the time of his interrogation, I would consider the question a close one. There seems to me merit to Justice Carro's argument that the defendant's statement was ambiguous, that the interrogating officer had a duty to clarify its meaning, and that his failure to do so precludes a finding that the People established their heavy burden of proof on the issue. However this issue was previously presented to this court on defendant's appeal from his conviction following the first trial. In reversing and remanding for a new trial, on a separate issue, the court unmistakably rejected defendant's argument on this question and sustained the hearing court's determination. (See *People v Taylor*, 68 AD2d 864.) Defendant is here appealing from his conviction following a second trial conducted in accordance with this court's previous determination. As correctly stated by Judge Lupiano, the test to be applied in this situation is whether or not there was manifest error in the prior determination. I am unable to find in the circumstances presented "a manifest error" that would justify reversing a prior determination of this court on the basis of which the second trial was conducted. I have also considered whether or not there have been developments in pertinent legal principles since the decision of this court on the first appeal on March 29, 1979 that would justify a different result now. In *People v Cunningham* (49 NY2d 203, 205), decided January 15, 1980, the Court of Appeals for the first time squarely held "that once a suspect in custody requests the assistance of counsel, he may not be questioned further in the absence of an attorney." However, this was not the issue before the court on defendant's appeal from the first conviction, nor is it the issue before us. The law was quite explicit at the time the first appeal was decided that the statement in issue must be suppressed if defendant had requested counsel at the time of the interrogation. (See, e.g., *People v Buxton*, 44 NY2d 33.) And although *People v Cunningham* (*supra*) might arguably suggest a development

with regard to a closely related issue that might bear on the question presented, the connection between the two issues seems to me too tenuous to justify a departure from this court's prior determination. Accordingly, and for the reasons indicated, I am in agreement with the majority of the court that the judgment of the Supreme Court, Bronx County (Bloom, J., at suppression hearing; Sullivan, D., J., at trial and sentence), rendered December 6, 1979, convicting defendant, after a jury trial, of murder in the second degree, should be affirmed.

Lupiano, J. (concurring). Defendant was indicted for the murder of Mildred Blumenkrantz, committed on December 2, 1974, during the course of a burglary of the decedent's apartment. An omnibus pretrial hearing as to the admissibility of an eyewitness identification supplied by one Deborah Maynard and the defendant's own statements to police officers following his arrest on December 19, 1974 was held. While the hearing court found certain pretrial identification procedures to be suggestive, Ms. Maynard's in-court identification of defendant and defendant's statements to the police following his arrest were not suppressed. This evidence was submitted at defendant's first jury trial and resulted in a conviction of murder in the second degree. On appeal to this court, defendant argued that the in-court identification of defendant by Ms. Maynard should be suppressed and also contended that his inculpatory statements to the police following his arrest must be suppressed because he requested an attorney at the start of the police questioning, thereby interdicting further interrogation in the absence of counsel. Relevant to this latter consideration it was pointed out to us that Detective Silverman was the first officer to question defendant. At the hearing Silverman testified that he advised defendant of his rights orally. Specifically, Detective Silverman, in relevant part, testified that he informed defendant that defendant "had a right to an attorney, if he didn't have an attorney one could be provided free of charge," to which Taylor replied either "I will use a Legal Aid" or "If I need a lawyer, I will use a court lawyer or Legal Aid". Although Detective Silverman could not recall defendant's exact words, he was sure that defendant was not requesting an attorney at that time. Detective Silverman, following this response, informed defendant that "he had a right to an attorney to be present during the questioning" and stated that "he said he understood that." Defendant then proceeded to make admissions to Detective Silverman. Thus on the prior appeal we were confronted by two critical issues: the propriety of Ms. Maynard's in-court identification, and the admissibility of defendant's statements. Regarding this latter issue, the question was simply whether defendant did or did not request an attorney. We concluded that defendant did not request an attorney and, therefore, his statements were admissible, but that Ms..Maynard's in-court identification must be suppressed. It must be noted at this point that the evidence against defendant consisted, to a practical extent, solely of Maynard's eyewitness identification and defendant's own statements to the authorities. Suppression of *both* would necessarily result in dismissal of the indictment. In our memorandum for the list disposing of this first appeal, we duly noted that we were reversing the judgment of conviction and directing a new trial, only on the basis that the in-court identification must be suppressed. We approved of the hearing court's granting defendant's pretrial motion to suppress to the extent of excluding the photographic and showup identification by the witness Maynard, but overruled said court's determination insofar as it otherwise denied defendant's motion and granted the motion to suppress the in-court identification (*People v Taylor*, 68 AD2d 864). We did not grant defendant's motion to suppress his statements to the police following his arrest. Accordingly a new trial was warranted and we so directed. At the

new trial the People's case consisted basically of defendant's confession. No other evidence was introduced which directly incriminated defendant. He again was found guilty by a jury. On the instant appeal, defendant again urges that his incriminating statements must be suppressed on the basis that he was deprived of his right to the assistance of counsel during the interrogation and that it was induced by a promise of leniency. With respect to defendant's claim that he did request an attorney and his statements must accordingly be suppressed because such request was not honored and the interrogation continued in the absence of counsel, such claim is barred by the law of the case and, in any event, is not viable on the merits. We implicitly ruled on such contention upon defendant's appeal from his conviction after the first jury trial (*People v Taylor, supra*). Further, such ruling clearly formed part of the *ratio decidendi* of our prior appellate decision and did not obtain the character of mere dictum. "Since the doctrine of res judicata technically requires a final judgment on the merits in one action and an attempted relitigation in a second, it has no application within an action. The doctrine of the 'law of the case' was devised to close that gap. It applies to various stages of the same action or proceeding; its purpose is to avoid the retrial of issues already determined in it. For practical purposes, the doctrine of the law of the case can be considered as a kind of intra-action res judicata * * * The law of the case doctrine makes a decided point, within a case, binding not only on the parties, but on all other judges of coordinate jurisdiction * * * A disposition claiming to be the law of the case will usually be found to be embodied in a court order, but that is not indispensable. If one judge's decision on a point is clear, it concludes other coordinate judges whether embodied in a formal order or not" (Siegel, New York Practice, § 448). "So long as the the facts remain the same, a rule of law once laid down by the court of last resort remains the rule throughout the subsequent history of the cause in all its stages except under extraordinary circumstances" (10 Carmody-Wait 2d, NY Prac, § 70:405). The doctrine of the law of the case applies to this court with respect to its own decisions (see *Walker v Gerli*, 257 App Div 249, 251). "It is the general rule that a determination by an appellate court becomes the law of the case, so that upon a subsequent trial or appeal, if the facts appear substantially the same, the prior determination should be followed. This does not mean that a higher court is required to follow the determination of a lower court but does mean that the lower or *the same court must abide by the prior determination in the same case* * * * While it is the duty of an appellate court to follow its former decision in the same case on a subsequent appeal, the court is not precluded from correcting a manifest error in its former judgment, and it may, for cogent reasons, reverse or qualify a prior decision" (Baylies, New Trials and Appeals, pp 760-762; emphasis added; Successive Appeals and the Law of the Case, 62 Harv L Rev 286; see, also, *Rankin v Shanker*, 25 NY2d 780, 782; *Trombley & Carrier Co. v Seligman*, 133 App Div 525; *People v Palumbo*, 79 AD2d 518, 521-522, 524-525, 527-528). In order to avoid the application of the law of the case doctrine it is necessary to demonstrate cogent reasons particularizing how our prior determination, which implicitly approved the admissibility of defendant's confession, was manifest error. No such cogent reasoning demonstrating that we heretofore committed manifest error, or that exceptional circumstances exist warranting departure from the law of the case doctrine, is set forth. To ignore the law of the case rather than to honor its strictures would, in effect, characterize the action of the Bench of this court on the prior appeal as inept or negligent in directing a new trial without resolving the appellate issues already clearly presented to such Bench and which directly affect the propriety of the evidence to be submitted at the new trial. Apart from

consideration of the law of the case doctrine, it is clear in the context of this record that it cannot be said, as a matter of law, that the police should have interpreted the defendant's remark to the effect that if he needed a lawyer, he would use Legal Aid as a request for assigned counsel (cf. *People v Mandrachio*, 55 NY2d 906, affg 79 AD2d 278). The defendant was informed of his rights on three occasions: first, by Detective Marsh at the precinct, who stated to defendant (the latter being in a holding cell at the time) — "You have a right to remain silent and anything you say may be used as evidence against you * * * You have a right to have an attorney present now or any time during any questioning * * * If you cannot afford an attorney, you can have an attorney * * * If at any time during questioning [he] felt * * * he wanted an attorney, we will stop the questioning, and get an attorney for [you]". Defendant was also informed of the murder charge at this time by Marsh. Defendant responded that he wished to make a statement. Detective Marsh contacted an Assistant District Attorney and stenographer, and, in the interim, permitted Detective Silverman to interview defendant. Silverman informed defendant (the second time) of his rights — "I informed the defendant he had a right to remain silent, anything he said could be used against him in a court of law. I asked him if he understood that. He said yes. I then told him he had a right to an attorney, if he didn't have an attorney, one could be provided for him free of charge. And to this he just made a statement 'I will use Legal Aid' and I informed him he had a right to an attorney to be present during the questioning, and he said he understood that." Silverman reiterated that in response to his statement that an attorney could be provided free of charge, defendant responded " 'If I need a lawyer, I will use a court lawyer or legal aid' — something to that effect. I don't remember his exact words but he didn't request an attorney at this time." Defendant proceeded to make inculpatory statements to Silverman. Subsequently, an Assistant District Attorney arrived and advised defendant (the third time) of his *Miranda* rights. Again the defendant did not request an attorney but proceeded to make an exculpatory statement. After the Assistant District Attorney left, defendant gave an oral inculpatory statement to Detectives Marsh and Hardwick and also gave a written inculpatory statement. At no point did defendant refuse to answer questions. Further, his prior experience with the criminal justice system demonstrates that defendant was fully capable of appreciating the consequences of confessing at the time he gave the confession (see *People v Perry*, 77 AD2d 269, 272). The hearing court on defendant's motion to suppress his confession and the jury at his second trial sitting as finders of the facts found the detectives' testimony to be credible and discredited the testimony of the defendant that he asked for counsel to be present at the interrogation and was told he did not require one. Such issues of credibility are for the trier of fact and should not be disturbed unless incredible or improbable as a matter of law (see *People v Samuels*, 68 AD2d 663, 666, affd 50 NY2d 1035). In the instant case there is no basis to disturb the findings relevant to the admissibility of defendant's inculpatory statements. Further, the testimony offered by the detectives does not appear to have been tailored to nullify constitutional objections (see *People v Garafolo*, 44 AD2d 86, 88). The defendant's remaining argument on appeal, that his confession should be suppressed because it was induced by a promise of leniency, is also subject to the doctrine of the law of the case (see *Stokes v County of Suffolk*, 63 AD2d 645; *People v Winslow*, 36 AD2d 997). Further, assuming the merits of this issue are confronted on this appeal, it is clear that from the totality of the circumstances, the defendant's will was not overborne at the time he confessed (cf. *People v Sunset Bay*, 76 AD2d 592). The hearing court stated that "[w]hile there has been a suggestion in the testimony, that there were certain potential promises of benefit to the defen-

dant in the event he made the statement, in which he set forth the facts as they occurred, it is clear that no promise of benefit made to him was such as to overcome his free voluntary act." Defendant's claim that Detective Silverman made a promise of leniency, which is impermissible under the rule laid down in *Bram v United States* (168 US 532), does not withstand scrutiny. Such rule is not to be applied with "wooden literalness" (*United States v Ferrara,* 377 F2d 16, 17, cert den 389 US 908; see, also, *United States v Frazier,* 434 F2d 994; *United States v Glasgow,* 451 F2d 557, 558). In the instant case, Detective Silverman explained various degrees of murder and manslaughter. He stated that if the person accused killed someone accidentially, the court had a different way of looking at it and a different crime (other than premeditated murder) could be charged. It cannot be said on this record that the defendant was promised leniency, or that there was a promise of a manslaughter charge as opposed to a murder charge. Silverman was informing the defendant that co-operation under the circumstances as they appeared to him, might result in less severe treatment of defendant's case. This is not impermissible and cannot be said to have overcome defendant's will (see *People v Perry, supra*). Against, on the issue of credibility there is no reason to overturn the hearing court's finding that no promises had been made. The issue as to whether the promises were made on this record, is one of fact, not law. Further, it is apparent that Silverman did not deliberately attempt to extract a confession by means of misleading legal advice. As already noted, defendant's appeal is from the judgment convicting him after his second jury trial. "A defendant is entitled to a fair trial, not a perfect one. He is also entitled on appeal not to a ferocious ferreting out of any error in 'blind' zeal to overturn a conviction, but to a dispassionate, reasoned and commonsense appraisal of the record, having as its goal the ascertainment of truth founded on due regard for significant (e.g., constitutional) error" (*People v Mandrachio, supra,* p 283). The judgment of the Supreme Court, Bronx County (Bloom, J., at suppression hearing; Sullivan, J., at trial and sentence) rendered December 6, 1979, convicting defendant, after a jury trial, of murder in the second degree, should be affirmed.

Milonas, J. (concurring). In my opinion, we are obliged to review and reconsider for possible error our prior determination as to the admissibility of the defendant's confession. Where an injustice has occurred, it would be wrong for this court to adhere to its prior mistakes on the ground of the law of the case. Certainly admitting an illegal confession, which is, as is the situation here, the heart of the People's case, would be "manifest error". However, upon review, I believe that the court below was not in error in admitting the defendant's confession. In its findings of fact, the hearing court determined that upon being advised of his right to an attorney, the defendant responded that "I will use a Legal Aid". The defendant's statement that he would use Legal Aid created an ambiguity as to when he desired a lawyer. At that point, Detective Silverman was required to inquire further as to the defendant's intent. Did he desire the immediate services of an attorney, thus mandating a cessation of questioning, or was he referring to some future date? Detective Silverman's next statement focused on this ambiguity. According to the hearing court, "Silverman then informed the defendant that he had the right to an attorney to be present during the questioning. And the defendant acknowledged that he understood that." In my judgment, the defendant was advised of his right to counsel at that particular time as he was, in effect, told that "You are entitled to an attorney now."

Carro, J. (dissenting). The hearing court, after observing the witness and listening to his testimony over two days, made the following findings of fact: "Silverman then informed him that he had a right to an attorney and if he did

not have an attorney, one could be provided for him free of charge. To this the defendant responded, quote, 'I will use a Legal Aid.', unquote. Silverman then informed the defendant that he had the right to an attorney to be present during the questioning. And the defendant acknowledged that he understood that. Silverman then queried the defendant with respect to the crime now before the court." These findings have support in and are consistent with the record. There appears to be no basis to disturb them. Issues of credibility are ordinarily for the trier of fact. (See concurring mem of Justice Lupiano, citing *People v Samuels,* 68 AD2d 663, 666, and *People v Garafolo,* 44 AD2d 86, 88.) Having determined that the defendant, in response to the *Miranda* warnings, stated "I will use a Legal Aid" and then, nonetheless, proceeded to respond to the officer's questioning without further insistence on an attorney, we must next determine whether his words were an unequivocal request for counsel; whether, in the context in which they were given, they were a mere statement, *in futuro,* that "If I need a lawyer" he would then use Legal Aid; or whether the words are ambiguous as to defendant's intent. Of course, if the words are what they seem — a request for Legal Aid as counsel — any subsequent statement should have been suppressed. If they exhibit a clear intent to defer a request for counsel to some future time, "If I need a lawyer", they may form no ground for suppression. However, if those words, in this context, are interpreted to be ambiguous on the question of defendant's intent, upon whom lies the burden of clarification? Is it the defendant's burden to make any request for counsel clear, unequivocal and free from doubt? In *People v Woodard* (64 AD2d 517, 518), the defendant, in response to the *Miranda* warnings, stated, "May I have Legal Aid?" He was importuned and did waive his right to counsel. The court stated (p 518), "the People have a heavy burden when they attempt to prove a defendant has voluntarily and intelligently waived that right. (*Miranda v Arizona,* 384 US 436, 475; *People v Ramos,* 40 NY2d 610, 618.) That burden was not carried here. Defendant's request for 'legal aid' was clear and categoric * * * His statement should have been suppressed even if his request for an attorney be considered an ambiguous one, as the People urge, for whatever abiguity was created existed because of the prosecutor's failure to clearly and effectively explain to defendant * * * what the right to counsel consisted of. And if the prosecutor was in doubt as whether defendant had indeed relinquished his right to counsel it was incumbent upon him not to play fast and loose with that precious right but rather to insure it was protected." An analogous situation arose in *People v Ramos* (40 NY2d 610), where the People contended that an attorney's statement concerning his representation of the defendant was ambiguous. The court held that any doubt as to the attorney's representation of the defendant gave rise to a burden on the prosecution to insure to the defendant the protection of the right to counsel. It was not an opportunity to circumvent that right or to place upon the defendant an affirmative burden to show the representation. The Court of Appeals stated (at pp 617-618): "If, in fact, the prosecution was in doubt as to whether an attorney had entered the proceeding, the burden should rest squarely on it to insure that the defendant's right to be represented by counsel be protected. The *ambiguity of the lawyer's statement* * * * cannot be seized by the prosecution as a license to play fast and loose with this precious right * * * Nor can we agree with the prosecutor that the defendant has an affirmative burden to point out to the prosecution that an attorney has entered the proceedings on his behalf. To hold otherwise would violate our prior holdings and seriously undermine this constitutionally guaranteed right." In *Miranda v Arizona* (384 US 436, 471-473), the Supreme Court stated "we hold that an individual held for interrogation must be clearly informed that he has the right to consult with

a lawyer and to have the lawyer with him during interrogation * * * this warning is an absolute prerequisite to interrogation * * * only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it." (Emphasis added.) In view of the ambiguity here, the officer's repetition, by rote, of the next prong of the *Miranda* warnings, without more, does not satisfy the People's burden. In this case, the officer ignored the defendant's comment, continuing past it, thus circumventing the right to counsel. The obligation should rest upon the prosecution to clarify an apparent ambiguity in a prospective defendant's response to the *Miranda* warnings. Was it not the responsibility of the officer to advise the defendant at that point that, if it was his request, assigned counsel, or "Legal Aid", would be provided before the questioning proceeded? In this instance, the people did not meet their burden of proving, beyond a reasonable doubt, a voluntary and knowing waiver (*People v Huntley,* 15 NY2d 72, 78). The majority maintains that because of the doctrine of the "law of the case", we may not consider the question of the admissibility of defendant's statements, on the ground that we implicitly ruled on that question upon defendant's appeal from his conviction after the first jury trial (*People v Taylor,* 68 AD2d 864). That decision set forth, as the ground of its reversal, the error committed by permitting the in-court identification of defendant. It never referred to the issue before us. Thus, we are unable to determine from a reading of the decision whether the court went beyond the identification to reach the admissibility of the statement, and it is arguable whether the consideration of that issue was implicit. While it may generally be the better view that, since the issue was before the court on the first appeal, it is implicit that the court considered it, nevertheless the doctrine of "law of the case" would not now be a bar to our review of that same issue. The Court of Appeals has stated that, "we cannot hold it to have been error that the Appellate Division chose, after dismissing defendants' first appeal * * * to entertain consideration of the same issue on the second appeal. Every court retains a continuing jurisdiction generally to reconsider any prior intermediate determination it has made." (*Aridas v Caserta,* 41 NY2d 1059, 1061.) Our own court has held, "[e]ven when a second appeal is before the bench which has made previous determinations, the doctrine is less than inflexible. 'In the absence of statute the phrase, law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power.' (*Messinger v Anderson,* 225 US 436, 444.)" (*People v Palumbo,* 79 AD2d 518, 519, affd 53 NY2d 894.) We should consider the issue of whether there was a waiver of defendant's right to counsel and, upon such consideration, reverse the conviction and remand for further proceedings.