The People of the State of New York, Respondent, v Siu Wah Tse, Appellant.

First Department, February 1, 1983

APPEARANCES OF COUNSEL

*Daniel J. Gotlin* for appellant.

*Beth D. Jacob* of counsel (*Norman Barclay* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

OPINION OF THE COURT

Ross, J.

Defendant appeals from a judgment convicting him, after a jury trial, of two counts of murder in the second degree, one count of attempted murder in the second degree, and one count of assault in the second degree. He was sentenced to concurrent indeterminate terms of imprisonment of from 15 years to life on each murder count, 5 to 15 years on the attempted murder count and 2 to 8 years on the assault count.

"The proof of the defendant's guilt was overwhelmingly established on the record herein" (*People v Mandrachio*, 79 AD2d 278, 279, affd 55 NY2d 906).

The record indicates that in 1979, in lower Manhattan, the dominant Chinese youth gang was the Ghost Shadows, which controlled the inner area of Chinatown, which included Mott Street. During this same period another active Chinese youth gang was the Black Eagles, which controlled the area north of Canal Street. The Ghost Shadows and the Black Eagles were rivals.

At about 4:00 A.M. on September 24, 1979 in the Wo Hop Restaurant, located at 15 Mott Street, the defendant, Frankie Mooi (Mooi) and Siew Ng (Ng), who were all members of the Ghost Shadows, surrounded Louis Mok (Mok), who was a former member of the Black Eagles. While standing next to a table occupied by Yuk Jack Tung (Tung) and Man Jooi Wang (Wang), Mooi, in the presence of the defendant and Ng, said to Mok: "You * * * have * * * nerve to come to this part of Chinatown." Immediately thereafter, in a hail of gunfire Mok fled the restaurant. One bullet struck the restaurant's cook, Chung Fan (Fan), in the upper right arm and other bullets fatally wounded Tung and Wang.

Mooi and Ng continued shooting at Mok as he ran across the streets of Chinatown.

Suddenly, at the corner of Mulberry and Park Streets Mok came face to face with defendant, and the defendant said: "You're still alive? Are you still running?" Then defendant dropped into a firing crouch and pointed what appeared to be a gun at Mok and pulled the trigger. Mok heard several clicks that sounded like the gun was empty or had misfired. Thereupon Mok and defendant struggled with each other until Mok escaped.

Despite the People presenting the testimony of numerous witnesses, including that of the wounded Fan, concerning the incident in issue, it is undisputed that Mok supplied the critical testimony upon which the People relied to convict defendant of these crimes. In evaluating Mok's testimony, the jury had before them, among other facts, that he had twice been convicted of extortion; that he had

used heroin and cocaine; that he had made a number of inconsistent statements in his testimony; and, that he had made a deal with the People by which he was to receive substantially lighter sentences on several pending cases against him, in exchange for his truthful testimony herein. In spite of these adverse factors in Mok's background, the jury by returning a verdict against defendant, obviously found Mok's testimony credible.

"Questions relating to the credibility of evidence, to whether particular evidence should be believed, and to the weight to be given to particular testimony, are questions for the trier of fact. Thus it has been said that it is the function of the trier of fact to assess the credibility of the witnesses * * *.

"One of the safeguards afforded the trier of fact in determining the credibility of oral evidence is the opportunity of observing the demeanor of witnesses while they are testifying" (65 NY Jur, Witnesses, § 88).

A unanimous Court of Appeals said in *People v Carter* (37 NY2d 234, 239): "Generally and whenever possible, the fact-finder, * * * should be able to see and hear the witness (*Schricker v City of New York*, 35 AD2d 743), since the appearance, attitude and demeanor of a witness upon being questioned and while before the court are matters to be taken into consideration in testing veracity and in determining the weight to be accorded his or her testimony (*Matter of Nowakowski*, 284 App Div 655, 657, affd on rearg 1 AD2d 250, 252, affd 2 NY2d 618). Indeed, the opportunity of observation often affords the most accurate method of ascertaining the truth (*Boyd v Boyd*, 252 NY 422, 429)".

This court said in *People v Samuels* (68 AD2d 663, 666, affd 50 NY2d 1035): "Credibility is to be determined by the trier of the facts".

The dissent indicates that Mok "had a history of disreputable and criminal activities." We agree. But more importantly, Mok's background was fully presented to the jury for their consideration. When members of criminal gangs seek to assassinate each other, the prime witnesses, of necessity, will usually be the surviving gang members, if any.

Unlike the dissent, we do not view the admission of the expert testimony of Detective Neil Mauriello as reversible error.

Mauriello is a 15-year veteran of the New York City Police Department, and he has spent the last eight years studying the operation of Chinatown gangs. He has become well informed about such things as the identity of the gangs, which gangs are active, who the individuals are that make up a particular gang, where in Chinatown particular gangs operate, and the attitude of particular gangs to intrusions into their territory by outsiders, including other gangs. His expertise on this subject has been recognized nationally and internationally. For instance, he has advised law enforcement agencies in Atlanta, Boston, Chicago, Detroit, Houston, Los Angeles, San Francisco, Washington, D.C. and also in Canada.

Detailed information about Chinese youth gangs was "not common knowledge" (*Dougherty v Milliken,* 163 NY 527, 533).

This "jury * * * [was] confronted with issues where * * * [such] specialized knowledge [would] be helpful in arriving at an intelligent determination" (21 NY Jur, Evidence, § 391).

We find that the trial court did not abuse its discretion in permitting Mauriello to testify. In *Meiselman v Crown Hgts. Hosp.* (285 NY 389, 398) the court said: "The prevailing rule is that the question of the qualification of a witness to testify as an expert is for determination, in his reasonable discretion, by the trial court".

Mauriello testified that his knowledge was derived principally from observations, investigations and information obtained from informants. Richardson on Evidence (Prince, 10th ed, § 368) states that: "[t]here is no definite rule as to how an expert witness must have acquired his skill. The witness may be qualified to speak from actual experience, from observation, or from study." Thus, a proper foundation was laid for Mauriello's testimony that the Ghost Shadows and the Black Eagles were rivals and that the defendant was a member of the Ghost Shadows.

The defendant claims that he was prejudiced by Mauriello's testimony to the effect that the Ghost Shadows were engaged in activities such as: "theft of services, extortion, robbery * * * possession of weapons, guns, swords, murders." Since Mauriello testified near the end of the trial, the effect of his testimony was reduced, because the jury had already heard convincing evidence of defendant's guilt. Further, this reference to these activities of the Ghost Shadows was the only such reference made by Mauriello in his entire testimony. In addition, the People did not improperly take advantage of this testimony nor is there any evidence that they maliciously brought it about. Even though defense counsel objected, he did not request that the answer be stricken nor did he move for a mistrial, or even request limiting instructions.

We conclude that, based upon the instant record, even if admitting this testimony was error, "when viewed in light of the quantum and nature of the other, properly adduced, evidence, the error was harmless" (*People v Rivera*, 57 NY2d 453, 454-455).

We disagree with the dissent that Mauriello's expert testimony had the effect of improperly bolstering Mok's testimony. Our examination of the record fails to support any such inference or speculation. We find that Mauriello's testimony did not in any way invade "the jury's province" (*Noah v Bowery Sav. Bank*, 225 NY 284, 292).

We hold that there is no justification for us to disturb this verdict.

Accordingly, the judgment, Supreme Court (GALLIGAN, J.), New York County, rendered April 14, 1981, convicting defendant of the crimes of murder in the second degree, attempted murder in the second degree and assault in the second degree, is affirmed.

SILVERMAN, J. (dissenting). I would reverse the conviction appealed from and order a new trial because of the admission of the "expert" testimony of Detective Mauriello that in his opinion the defendant was a member of the "Ghost Shadows" gang. I do not believe such testimony as to a significant concrete fact, not within the personal knowledge of the witness, is a proper subject for opinion

testimony by an expert witness. This is not testimony merely as to general conditions, the existence of gangs, the way they operate, division of territories, etc. This is fact testimony in the guise of opinion as to a particular defendant's membership in a particular criminal organization.

Nor am I able to say that this was harmless error. It is true that the People's chief witness Mok testified to all these facts. But he had himself been a member of a rival gang and had engaged in many criminal activities. It is also true that the detective gave the basis of his opinion, i.e., his observations of the defendant with known members of the Ghost Shadows.

The evidence as to defendant's membership in the Ghost Shadows was significant in the case to show that he shared the criminal intent of the persons with whom he was alleged to be in company, and who did the actual shooting. The jury might well have drawn that inference of shared intent from the other evidence in the case without Detective Mauriello's expert opinion. But I cannot say this expert opinion made no difference.

As I have said, Mok himself had a history of disreputable and criminal activities. The jury might have disbelieved him. Thus the expert testimony of the police officer probably strengthened the acceptability of Mok's testimony and for all we know may have been decisive.

In his summation, the District Attorney said: "Again, you need not rely on the testimony of Mr. Mok alone as to the defendant's membership in the Ghost Shadows, Detective Mauriello again testified on the basis of his experience, the defendant Tse, the defendant Ying and Mooi were all active members of the Ghost Shadows, acting in concert. The [sic; In?] methodical and orchestrated fashion, Tse, Ying and Mooi had now stalked their predator."

MURPHY, P. J., BLOOM and KASSAL, JJ., concur with Ross, J.; SILVERMAN, J., dissents in an opinion.

Judgment, Supreme Court, New York County, rendered on April 14, 1981, affirmed.