■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD GREEN, Appellant.—Judgment of the Supreme Court, New York County (Blyn, J.), rendered February 6, 1980, convicting defendant, after a jury trial, of criminal possession of a weapon in the second degree, and sentencing him as a second violent felony offender to an indeterminate term of 4 to 8 years, is modified, on the law and facts, to reduce the conviction to criminal possession of a weapon in the third degree, vacate the sentence imposed, and remand to the Supreme Court, New York County, for resentencing, and otherwise affirmed.

This case arises out of defendant's alleged robbery of $3 from Raymond Massa, an unemployed alcoholic. According to Massa's testimony, at about 3:00 P.M. on May 22, 1979, he saw defendant, accompanied by four other people, speak to two Puerto Rican men, then enter a movie theater across the street. Massa, who was standing in the hallway of a "go-go" club looking at pictures of the dancers, saw defendant and the four others leave the movie theater at about 4:30 P.M. and enter another movie theater, where they remained until about 11:30 P.M. Massa allegedly remained in the same place for eight and one-half hours "watching pictures of the naked girls."

According to Massa, the defendant approached him on the sidewalk in front of the go-go club with a gun partially concealed with his left hand. Defendant allegedly asked Massa if he had any money and Massa replied, "I got three dollars", whereupon he gave the money to defendant. Defendant allegedly took the three singles, put them in his jacket pocket, the gun in his rear pants pocket, and then went down into the subway at Eighth Avenue.

After defendant went into the subway, Massa went to get the police. Massa then took the officers down into the subway. Massa saw defendant with three women and a child, looking in the shop windows of the subway arcade, and pointed out defendant to the officers as the man who had robbed him. One of the officers approached defendant with his gun drawn. When the officer approached, defendant lifted the gun from his pocket and dropped it to the floor, where one of the officers retrieved it.

Massa had a number of previous arrests and convictions. In 1955, he was convicted of burglary and sent to State prison, where he was confined in a mental institution, as a patient, for seven years. Massa was confused as to the dates of his confinement, thinking that he had been released in 1956 when, in fact, he had been committed in 1956. In 1966, he was arrested for the sale of narcotics and arrested for possession of drugs in 1968. Massa also admitted that he was an alcoholic. On the day of the robbery, Massa acknowledged that he needed a drink very badly and was in actual pain at the time. At trial, he was also feeling the effects of not having had a drink and appeared confused by many of the questions, to which he gave unresponsive answers. Massa also acknowledged that he was wearing the same clothes in court that he had been wearing five months earlier on the day of the robbery and had not changed clothes in the interim.

Police Officer Thomas Caiafa testified that after he and his partner spoke to Massa, they approached defendant, who was walking one step behind a group of three women and a small child, in the concourse of the subway. The officer saw defendant's hand go under his jacket and make a "downward motion with his right hand." He then heard the sound of metal hitting concrete. Upon looking down, the officer saw a small weapon. Defendant was handcuffed and taken into custody.

When defendant was searched at the precinct, he was found to have $135 in his possession in denominations of $5, $10 and $20. No $1 bills were found on him.

Dorothy Stackhouse, a Pittsburgh, Pennsylvania, resident, testified that on May 22, she was visiting relatives in New York. At about 8:00 P.M., with defendant, her two daughters and grandson, she went sightseeing in the Times Square area. Mrs. Stackhouse did not see defendant walk away from the group to go into a hallway or talk to any strangers at any time. Eventually, the group decided to leave 42nd Street and

headed for the subway. She saw two police officers approach the group from behind and place defendant under arrest. Mrs. Stackhouse did not see defendant remove anything from his pocket or see an officer pick up a gun. Mrs. Stackhouse's daughter, Juanita, corroborated this version of events. According to Juanita, the group did not go into any movie theaters when they reached 42nd Street, but spent the time "sightseeing, looking in the windows." Defendant remained with the group the entire time and did not walk into a hallway or stop to talk to any strangers. After they entered the subway, Juanita saw a couple of police officers approaching them. They grabbed defendant, who she did not see do anything, and took him away. She did not see an officer pick something up from the floor.

At the conference on jury instructions, defense counsel objected to the court's decision to submit the charge of criminal possession of a weapon in the second degree to the jury in the event they found defendant not guilty of the robbery charge. The court concluded that it was possible for the jury to reject portions of the complainant's testimony and find the defendant possessed the gun with an intent to use it unlawfully against the complainant. On the facts before us, we disagree.

Defendant's conviction on the charge of criminal possession of a weapon in the second degree rests solely on the testimony of the complainant, which was not sufficient to prove his guilt beyond a reasonable doubt. Massa was an unreliable witness, due to the effects of "alcohol deprivation", both on the date of the incident and when he testified in court. Moreover, the fact the jury acquitted defendant of the robbery charge indicated it did not credit the complainant's story in toto.

While it is true that the jury is permitted to accept or reject portions of a witness' testimony, the complainant's account of the alleged robbery presents an integral transaction which cannot be parsed out and accepted on a piecemeal basis. There was no testimony of an altercation with the complainant in which threats were exchanged or a weapon displayed, nor was there any testimony concerning any criminal conduct by defendant, apart from the alleged robbery, from which intent to use the weapon may be inferred.

The complainant's testimony was not only contradicted by defendant's witnesses, but by testimony from the People's witnesses, as well. The arresting officer acknowledged that when defendant was searched, he was in possession of $135 in

denominations of $5, $10 and $20. Not a single $1 bill was found on defendant, who allegedly stole $3 from Massa.

Although the jury might have found that no property was taken from Massa, Massa's testimony as to the robbery does not support a theory of an attempted robbery or any altercation in which defendant displayed a gun with intent to use it unlawfully. According to Massa, defendant approached him with a gun drawn, asked if Massa had any money, and then pocketed the three singles which Massa turned over. This was the only exchange between Massa and the defendant and there was no evidence that defendant threatened Massa with a gun but failed to take any property.

Although the evidence does support a finding that defendant had criminal possession of the weapon found by the police, the officers' testimony negates any finding that defendant intended to use the weapon unlawfully against the arresting officers. When they approached, he removed the gun from his pants pocket and attempted to discard it surreptitiously. Moreover, the circumstances of defendant sightseeing with members of his family tends to negate the statutory presumption of intent to use. It is most unlikely that a man out sightseeing with female relatives and a child, with $135 in his pocket, would rob a derelict of $3 and then attempt to shoot it out with a police officer who approaches with his gun drawn.

We find that the evidence presented was not legally sufficient to support a finding that defendant possessed the weapon with intent to use it unlawfully against another. We therefore modify the judgment to reduce the conviction to the lesser included charge of criminal possession of a weapon in the third degree and remand for resentencing accordingly. Concur —Asch, Bloom and Ellerin, JJ.

Sullivan, J. P., and Milonas, J., dissent in a separate memorandum by Milonas, J. Milonas, J. (dissenting). In my opinion, the judgment being appealed herein should be affirmed.

It is the defendant's contention that his conviction of criminal possession of a weapon in the second degree should be vacated because it is repugnant to his acquittal on first degree robbery. However, a conviction may be set aside "only in those instances where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered" (*People v Tucker,* 55 NY2d 1, 7). Based upon the evidence, the jury could reasonably have determined that the defendant possessed the gun with the intent of using it against the

victim while still acquitting him of accomplishing a robbery. In addition, the court failed to instruct the jury to consider the charge of attempted robbery, and it is certainly conceivable that the jury found that the defendant possessed the gun with the intent of robbing the victim but that the defendant did not actually complete the robbery. At any rate, it is not the function of an appellate court to second-guess the thought processes of the jury. (*See, People v Tucker, supra*, p 7.)

Although the victim, Raymond Massa, may not have been an ideal witness, it was within the sole province of the jury to assess his credibility and reliability through their observations of his conduct and demeanor at trial. (*See, People v Malizia*, 62 NY2d 755; *People v Parks*, 41 NY2d 36; *People v De Tore*, 34 NY2d 199; *People v Siu Wah Tse*, 91 AD2d 350.) In reviewing legal sufficiency, we are required to examine the evidence in the light most favorable to the prosecution. (*People v Bonilla*, 63 NY2d 341; *Matter of Anthony M.*, 63 NY2d 270; *People v Malizia, supra; People v Contes*, 60 NY2d 620; *People v Way*, 59 NY2d 361.)

In that connection, there was nothing inherently unbelievable in the complainant's account, which was corroborated in all significant respects by the testimony of the arresting police officers. When the complainant approached the officers and informed them that he had just been robbed at gunpoint, he provided the police with a description of the perpetrator, his clothing and the direction in which he had fled. Upon entering the subway station where the victim claimed that the robber had gone, Massa unhesitatingly identified the defendant as the person who had just robbed him. The defendant and his clothing matched the description given to the police by the complainant. After being directed by the officers not to move, the defendant reached into his right rear pants pocket and threw a .38 caliber pistol to the floor. According to the complainant, the defendant had put the gun in his right rear pants pocket before leaving the scene. The mere fact that no dollar bills were subsequently recovered from the defendant's person is hardly dispositive of the matter, particularly since the jury could reasonably have concluded from the evidence that the defendant either did not succeed in his attempt to rob the victim or that he possessed the time and opportunity to dispose of the currency prior to his apprehension by the police. Moreover, as the Court of Appeals explained in *People v Tucker* (55 NY2d 1, 7, *supra*), the problems involved in speculating as to how the jury perceived and weighed the evidence "are compounded by the possibility that the jury has

not necessarily acted irrationally, but instead has exercised mercy". When a jury has decided to show leniency to the defendant, "the court should not then undermine the jury's role and participation by setting aside the verdict" (*supra,* p 7).