[676 NYS2d 555]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL MILHOUSE, Appellant.

First Department, August 6, 1998

## APPEARANCES OF COUNSEL

*Elliot Felig* of counsel (*Norman Barclay* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

*Michael C. Taglieri* of counsel (*Daniel L. Greenberg,* attorney), for appellant.

## OPINION OF THE COURT

ROSENBERGER, J.

Defendant was charged with criminal possession of a controlled substance in the third degree and assault in the second degree. At trial, the People's chief witness, Officer Byrne, testified that he was on patrol in the area of 39th Street and Eighth Avenue on the evening of December 1, 1994. Shortly after 6:00 P.M., he observed defendant engage in three hand-to-hand transactions, in two of which Officer Byrne saw the buyer pass money to defendant. When Officer Byrne approached the third transaction, the prospective buyer walked away still holding his money, and defendant dropped a purple-topped vial as he started to walk off in the other direction.

Officer Byrne further testified that he told defendant to stop and put his hands up against a wall. While Officer Byrne was attempting to handcuff defendant, defendant threw him to the ground, causing Officer Byrne to injure his knee. Defendant ran away and tried to hide in a fruit market. Officer Byrne pursued him and told him to get on the ground. He saw defendant crouching behind a table of fruit. Defendant was holding a black and orange object in his hand, which was partially in his pocket. When defendant emerged, Officer Byrne sprayed

him with pepper mace and pushed him aside. Defendant advanced towards Officer Byrne with extended hands, and Officer Byrne then kicked him in the torso. Other officers arrived to help him subdue defendant, who was found in possession of $138, nine vials of crack and a black and orange box cutter.

Defendant's case consisted of the testimony of his girlfriend, who told a very different story. According to her, defendant was a user but not a seller. He had the money in his pocket because they were shopping for a crib for their expected child. Officer Byrne approached defendant for no apparent reason and threw him up against a wall. When defendant got away from him, Officer Byrne gave chase, but fell and injured his knee.

Shortly before the trial, the court had conducted a *Mapp* hearing and denied defendant's motion to suppress the drugs, the money and the box cutter. The court found that the police had had probable cause to arrest, based on Officer Byrne's credible testimony about the hand-to-hand transactions. As for the box cutter, the court admitted it for the limited purpose of showing defendant's intent to prevent Officer Byrne from performing his lawful duty, and gave a limiting instruction at trial to that effect.

The court's jury instructions on the specific crimes charged first discussed the elements of criminal possession of a controlled substance pursuant to Penal Law § 220.16. These instructions stated that the People had the burden of proof beyond a reasonable doubt. The court also told the jury that it was free to believe or disbelieve Officer Byrne's testimony that the sales took place.

Next, the court's charge on assault in the second degree pursuant to Penal Law § 120.05 (3) correctly stated that the People must prove the following four elements beyond a reasonable doubt: defendant caused injury to a police officer; defendant knew that the injured party was a police officer; the officer was performing his lawful duty; and defendant intended to prevent such performance. However, over defense counsel's repeated objections at the pre-charge conference and after the charge was given, the court told the jury, "I instruct you as a matter of law Officer Byrne was performing his lawful duty."

The court explained to defense counsel that the legality of Officer Byrne's initial approach to defendant "is not an issue for the jury. I decided it's probable cause and it's my position he was performing a lawful duty." The court apparently believed that since it had found Officer Byrne's description of

the alleged hand-to-hand transactions to be credible at the *Mapp* hearing, this version of the facts was no longer in dispute as a matter of law.

This erroneous charge was further highlighted for the jury during deliberations, when the court repeated it in response to the jury's second request for clarification of the elements of assault. The jury asked whether it would be second-degree assault if "an officer falls and is injured while pursuing an alleged perpetrator who flees to avoid arrest." Defense counsel asked the court to preface its answer with an explicit statement that the jury must resolve the competing testimony by Officer Byrne and defendant's girlfriend as to whether a crime was actually perpetrated. The court refused, and simply responded that the defendant must intend "to prevent the officer from performing his lawful arrest. If you find under the facts the defendant was fleeing, and the officer was chasing after him, and as a result of that the officer fell," the intent element would be satisfied. The court also referred to defendant as "the perpetrator," not "the alleged perpetrator" as the jury had done.

■ Defendant was found guilty of both offenses. On appeal, defendant contends that the box cutter should not have been admitted because it was irrelevant and highly prejudicial. He also claims that the court's charge as to lawful duty was reversible error as to the assault count of the indictment because it improperly invaded the province of the jury. As we agree with the latter point, we modify to vacate defendant's conviction for assault and remand for a new trial on that count.

Defendant claims that the box cutter was not relevant to the issue of intent because the claimed assault occurred before Officer Byrne even saw the box cutter. He argues that since there was no connection between the box cutter and the injury, proof of defendant's alleged readiness to use the box cutter was speculative and irrelevant, and only served to prejudice the jury by implying that he had violent propensities (*People v Johnson*, 61 AD2d 923, 924, *appeal dismissed* 47 NY2d 124). However, the box cutter was properly admitted to complete the narrative of events leading up to defendant's arrest (*People v Starr*, 213 AD2d 758, 760, *lv denied* 85 NY2d 980). The officer's alleged belief that defendant had a weapon in his hand was relevant to explain why he pushed defendant aside and sprayed him with mace, actions that might otherwise support the defense theory that the officer attacked defendant for no reason.

The erroneous jury charge is a more serious matter. Unless the defendant has conceded a fundamental fact establishing an element of the crime, it is reversible error for the court, in its jury charge, to remove that element from the jury's consideration (*People v Flynn*, 79 NY2d 879, 881). Harmless error analysis does not apply, no matter how strong the evidence against defendant concerning the fundamental fact in question (*People v Lewis*, 64 NY2d 1031, 1032).

One of the necessary elements of second-degree assault under Penal Law § 120.05 (3) is that the officer was performing a "lawful duty". This element may be negated by a factual showing that the arrest or seizure was unlawful (*People v Voliton*, 83 NY2d 192, 195).

Here, defendant emphatically disputed the officer's version of the events allegedly justifying his arrest. On the one hand, if the jury believed beyond a reasonable doubt that Officer Byrne had seen the drug sales he described, the jury could deem the arrest lawful. On the other hand, if the jury believed the testimony of defendant's girlfriend that the two of them were on an innocent errand when the officer accosted him for no reason, the jury would have to find that the "lawful duty" element was not proven.

By removing that element from the jury's consideration, the court usurped the jury's role as the ultimate arbiters of credibility (*see, People v Settembre*, 117 AD2d 634). The court wrongly reasoned that proof of "probable cause" at a *Mapp* hearing was conclusive proof of "lawful duty" at trial. In actuality, the two issues are determined according to wholly different standards of proof. At a suppression hearing, the burden of proof is on the defendant to show, by a preponderance of the evidence, that the officer lacked probable cause to arrest (*People v Abdullah*, 164 AD2d 260, 262). At trial, the burden is on the People to prove beyond a reasonable doubt that the officer was performing his lawful duty (*People v Craft*, 101 AD2d 984, 985). Therefore, the fact that the hearing court initially finds probable cause does not mean that the prosecution has conclusively proven its version of events to be true beyond a reasonable doubt. Were this not so, denial of a suppression motion would compel a guilty verdict in many drug possession cases as a matter of law, which is clearly not the rule.

In *People v Greene* (221 AD2d 559), the Second Department reversed a second-degree assault conviction under circumstances nearly identical to the instant case. The trial court had charged the jury that if the officer was attempting to arrest the

defendant, " 'he was performing a lawful duty' " as a matter of law (*supra,* at 560). This instruction wrongly "removed from the jury's consideration the lawfulness of the police conduct" by giving them the mistaken "impression that any attempt to make an arrest established authorized and lawful conduct as a matter of law" (*supra,* at 560). We find this reasoning persuasive.

■ We also find the sentence of 9 to 18 years imposed on the conviction for criminal possession of a controlled substance in the third degree to be excessive, in light of the circumstances. It should be reduced to 5 to 10 years.

Accordingly, the judgment, Supreme Court, New York County (Budd Goodman, J.), rendered June 15, 1995, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the third degree and assault in the second degree, and sentencing him, as a second violent felony offender, to consecutive sentences of 9 to 18 years on the possession conviction and 2½ to 5 years on the assault conviction, should be modified, on the law and in the interest of justice, to vacate defendant's conviction for assault in the second degree and remand for a new trial on that count, and to reduce the sentence on the possession conviction from 9 to 18 years to 5 to 10 years.

LERNER, P. J., SULLIVAN, NARDELLI and ANDRIAS, JJ., concur.

Judgment, Supreme Court, New York County, rendered June 15, 1995, modified, on the law and in the interest of justice, to vacate defendant's conviction for assault in the second degree and remand for a new trial on that count, and to reduce the sentence on the possession conviction from 9 to 18 years to 5 to 10 years.