■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FREDDY RIVERA, Appellant. [847 NYS2d 556]—

Judgment, Supreme Court, New York County (Charles H. Solomon, J.), rendered July 5, 2005, convicting defendant, after a jury trial, of assault in the second degree, and sentencing him as a second violent felony offender to a determinate prison term of five years, with five years of postrelease supervision, unanimously affirmed.

On April 2, 2004, Police Officers Ohuche and Vasquez responded to a radio call to an apartment in Manhattan. They did not know the type of situation they faced. From outside the apartment, Ohuche heard a profanity-laden argument between a male and a female, who were subsequently identified as defen-

dant and his girlfriend, Leticia Otero. When Otero admitted the officers into her apartment, she appeared distraught and repeatedly demanded that defendant leave. In the presence of the officers, defendant continued to argue and curse at Otero, asking why she had called the police. Officer Ohuche testified that it looked like there had been a fight in the room, which was disheveled, with glass cups knocked over and liquid spilled on the floor.

After spending some time attempting to calm the situation, the officers convinced defendant to leave the apartment. But before he did, Otero produced a facially valid order of protection in her favor and against defendant and demanded that he be arrested. Defendant never stated to the police that he had not been served with the order, nor did he verbally protest that he had not violated it. His aggressive conduct escalated, and the officers called for backup support.

Officer Rubio and her partner arrived. Soon after they entered the apartment, defendant ran toward the kitchen, and Otero said "watch out, he might pick up a knife." Officers Ohuche and Rubio both testified that any chase into a kitchen presents a safety hazard to the police. In their attempt to restrain defendant, Rubio was injured.

An essential element of assault in the second degree is that a defendant's acts were committed with intent to prevent an officer from "performing a lawful duty" (Penal Law § 120.05 [3]). The People were thus required to prove that the police had been acting lawfully, i.e. that they had probable cause when they arrested defendant during the course of this confrontation (*see People v Milhouse*, 246 AD2d 119 [1998]). The People were not required to prove that defendant had actually violated the order of protection by committing the crime of harassment or other offenses (*see People v McDermott*, 279 AD2d 361 [2001], *lv denied* 96 NY2d 803 [2001]). Here, there was probable cause to believe the order of protection, which was the predicate for the officers' attempt to arrest defendant that resulted in the struggle that injured Officer Rubio, had been violated. Defendant's aggressive actions in the presence of the officers, the distraught condition of Otero, as well as the disheveled condition of the apartment amounted to probable cause to believe that defendant had harassed, menaced, intimidated or otherwise threatened Otero. Moreover, her warning about a knife presented a safety situation for the officers, and they acted lawfully in attempting to restrain defendant. It was during this altercation that Officer Rubio sustained her injuries.

Accordingly, the People satisfied their burden in the first

instance of proving the legality of the police conduct by demonstrating adequate probable cause to arrest defendant (*see People v Thomas*, 291 AD2d 462, 463 [2002]). Concur—Tom, J.P., Friedman, Gonzalez, Sweeny and Kavanagh, JJ.